CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. NELSON, and

CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. BUCHANAN.

Opinion delivered October 19, 1908.

1.  CARRIERS—WRONGFUL ARREST—LIABILITY.—A railroad company is not liable for a wrongful arrest of a passenger made by a policeman stationed at its depot and acting solely under the control of the municipal authorities, though half of the policeman's salary was paid by the railroad company. (Page 526.)

2.  SAME—LIABILITY FOR UNAUTHORIZED ACT.—A railroad company is not liable for the wrongful arrest by a policeman of a passenger, though the arrest was made under the directions of the company's station master if the latter had no authority to direct the arrest to be made. (Page 527.)

Appeal from Lonoke Circuit Court; *Eugene Lankford*, Judge; reversed.

*Buzbee & Hicks*, for appellant.

1. The tickets held by appellees did not entitle them to passage on appellant's train at this time. They had used them previously on different dates to pass through appellant's gate at the depot, thereby obtaining the right to enter and ride upon its train. On each prior occasion the journey had been aban-

doned. These tickets were contracts for continuous passage. Once having begun the journey and having abandoned it, the right to use their tickets no longer existed. 2 Hutchinson **on** Carriers, (3 Ed.), § 1041; 43 Ark. 533; Moore on Carriers, § 11; 28 Am. & Eng. Enc. of L., (2 Ed.), 185.

2. If it be conceded that the arrest of appellees was improper and illegal, appellant is still not liable. It was in no wise within the apparent or real scope of authority of appellant's agent, Gallagher, to cause the arrest of appellees for presenting these void tickets for passage. L. R. 2 Q. B. 534; 3 Wash. 174; 54 Fed. 468. Moreover, notwithstanding appellant paid one half of the salary of the policeman, he was not answerable to appellant, nor subject to be discharged by it. 12 Am. & Eng. Enc. of L., 775; 19 D. C. 385; 72 Md. 313. And Gallagher, the gatekeeper, had no authority, except to inspect tickets for passage through the gate and to perform certain duties in the movement of trains. 22 Ill. App. 568; L. R. 5 C. P. 445; 41 Ia. 358; 65 Ark. 144.

*Trimble, Robinson & Trimble, J. W. Blackwood,* and *J. G. Dunaway,* for appellees.

1. Both Gallagher and Bourland were acting in the course of their employment, in and about appellant's business. The Hackett case, 58 Ark. 386, is decisive of this case. See, also, Cooley on Torts, 532; Wood, on Master & Servant, § § 4, 7; *Id.* § 309; *Id.* § 307; 42 Ark. 552; 109 Mass. 154; 66 Ill. 238; Clark & Skyles, Law of Agency, § § 491, 493, 494, 502; 75 Ark. 584; 58 Ark. 381; 42 Ark. 542; 62 Ark. 116. It is a personal injury if the appellant's servants either wrongfully excluded or ejected appellees, or arrested them without warrant of law; and appellant is liable if they acted with reference to or in furtherance of its business, or in the actual or apparent scope of their authority, although they may have had no directions to do this specific act, or acted in violation of orders placed upon them. 67 Ark. 399.

2. The offense in this case was false imprisonment, and the arrest was without warrant. A peace officer may arrest without warrant only when a public offense is committed in his presence, or where he has reasonable grounds to believe that the person arrested has committed a felony. Kirby's Digest, §

2118; 33 Ark. 321. See, also, Kirby's Digest, § 2124. If it be conceded that Bourland had no authority as an officer or agent of appellant, yet, if Gallagher, in preventing appellees from going into the train on their tickets, abused his authority and procured their arrest through Bourland, the company is liable. 70 Ark. 141; Field on Damages, § 679; Cooley on Torts, § 169, p. 195; 3 Suth. Dam. § 1257; 9 N. E. 614; 7 Gray, 59; 2 Strange, 993.

BATTLE, J. These two cases are based and were tried upon the same facts, and the transcripts therein are the same in every material respect.

On May 17, 1906, Homer N. Nelson and E. W. Buchanan purchased of the Chicago, Rock Island & Pacific Railway Company tickets for transportation from Hot Springs to Little Rock, Arkansas, and return. They used that portion of the tickets which entitled them to transportation from Hot Springs to Little Rock. The other portion of the ticket showed that it was to hold good until the 17th day of June, 1906, and that it had been repeatedly used to gain entrance through the gate of the railroad company at the depot at Little Rock, but not on the train. On the 6th day of June, 1906, they appeared in a line of twenty-five or thirty persons before the gate to the depot at Little Rock, again seeking entrance thereby by going through a narrow passage-way leading to the same. They were among the first in the line, and were among the first to present their tickets to the gate keeper and demand entrance. He refused to allow them to enter because their tickets had before that time been punched by him or his predecessor, and requested them to get out of the passageway and allow others in their rear to come forward, and, they insisting on entrance, he called A. E. Bourland, a policeman at the depot, to take "charge" of them, who requested them to step aside, which they did, and so remained until nearly all of those standing in front of the gate had passed in, when they again presented their tickets with the same result as before, and, expressing a desire to go upon the passenger train then at the depot and insisting that they had the right to do so, the gate keeper asked the policeman to "take charge of them," which he did and confined them in the city prison of Little Rock, where they were compelled to remain about thirty minutes. On the next morning, the 7th of June,

they were tried in the police court and discharged. After that each one of them brought an action against the railroad company for damages on account of the arrest and imprisonment, and recovered judgment for $500 for compensatory damages and $200 for punitive damages.

Bourland was an ordinary policeman, appointed and sworn as such and in the same manner. The railroad company paid one-half of his salary, and the city the other half. Yet he was not employed by the company nor under its control. Hawkins, the Chief of Police, testified that he considered that it had some control over him because it paid one half of his salary, but there is no evidence that it had or exercised any. No such act was shown. It had no power to remove him, and was not responsible for his acts. He was stationed at the depot to arrest offenders and protect life and property, as an ordinary policeman, and received his instructions from the Chief of Police, reported every day to police headquarters, and exercised powers vested in him by law, and not by employment of the railroad company. The only reasonable inference is that it paid one-half of his salary to induce the city of Little Rock to station a policeman at its depot, with the same effect had it not paid any part of the salary.

Gallagher, the gate keeper, was a station master. Bourland, the policeman, not being a station employee of the railroad company, was not subject to his control, and he had no authority to direct him to arrest. His powers and duties were defined by a rule of the company as follows:

"702. The station master reports to the superintendent, and must obey the orders of the trainmaster and chief dispatcher. He has charge of the passenger station and the station employees where he is located. It is his duty to see that the station is kept in proper condition; preserve order about the station; prevent confusion and delay in seating the passengers and receiving and delivering baggage; and attend courteously to the comfort and wants of passengers and see that the employees do the same. He must see that the cars in the train starting from his station are inspected, cleaned and properly equipped; that the trainmen are ready for duty at the appointed time; with the necessary signal and other appliances; and that the trains are properly made up, and leave on time."

The defendant is not liable in damages for the arrests of plaintiffs.

Judgments in the two cases reversed and actions dismissed.