ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*
MORROW.

Opinion delivered January 4, 1909.

RAILROADS—LIABILITY FOR ACTS OF PEACE OFFICER.—A railway company is not liable for the unauthorized acts of a town marshal in assaulting a trespasser upon its train and ejecting him therefrom, although it had furnished him a pass over its road to encourage him to perform his official duties.

Appeal from Jackson Circuit Court; *M. M. Stuckey,* Special Judge; reversed.

*T. M. Mehaffy* and *E. B. Kinsworthy,* for appellant.

While it is within the discretion of the court as to whether a continuance is granted, it is error to abuse that discretion. 60 Ark. 564; 71 *Id.* 180. When plaintiff is permitted to amend his complaint showing an entirely different date, defendant, on proper motion, should be granted a continuance on ground of surprise. 71 Ark. 197; 67 *Id.* 143. A party stealing a ride on a train commits a misdemeanor. Acts 1905, c. 191. A peace officer may make an arrest without a warrant where a public offense has been committed in his presence. Kirby's Digest, § 2119. If the act be committed in the discharge of or in an effort to discharge the official duties of such officer, though wrongful and in excess of his authority, the railroad company is not liable, though it pays such officer's salary. 58 Ark. 383. Such officer acts in his official capacity, and not as agent of the railroad company. 34 Am. & Eng. R. Cases, 307; 20 Atl. 189; 42 Ark. 542; 115 Mo.

596; .58 Ill. App. 278. The argument of plaintiff's counsel was error. 80 Ark. 23; *Id.* 158.

*Oldfield & Cole,* and *McCaleb & Reeder,* for appellee.

Substituting the word "July" for "August" does not come within section 6150, Kirby's Digest, providing for continuances. Where the new evidence would tend to enhance the damages, it is not error to overrule defendant's motion for a continuance to enable him to secure such evidence. 67 Ark. 143. The evidence tending to prove the officer to be the railroad company's agent was sufficient. 76 Ark. 220. The proof is sufficient when the person to be charged as principal assents to the acts of the agent. 53 Ark. 210. In the Buchanan case the officer was not employed by the railroad company, nor under its control. The railroad company is liable for the acts of an officer in such cases. 6 Ind. App. 202. In the Hackett case, 58 Ark. 381, the assault committed was not in the line of the officer's duties as an officer. The manager of a theater is responsible for the acts of a special policeman who was appointed for the theater at the request of the manager. 41 Am. St. R. 440; 24 L. R. A. 483; 22 S. W. 488. Where a stranger, at the request or by permission of the railroad company's servant, performs such act in such manner that an injury ensues, the company is liable. 40 Mo. App. 654; 34 *Id.* 512; 17 La. Ann. 166. The master is charged with negligence of an employee of a servant, though he has no immediate control of such employee. 5 So. 537. The appointment of the officer as agent of the railroad company was ratified. 53 Ark. 210; 76 *Id.* 220. Argument of counsel is not reversible error unless an undue advantage is thereby secured which works a prejudice to the losing party. 74 Ark. 256; *Id.* 289; 75 *Id.* 67. The legitimacy of questions for argument is left to the sound legal discretions of the presiding judge. 20 Ark. 219; 34 *Id.* 649; 38 *Id.* 304. There is no error in allowing counsel to comment on the failure of defendant to produce a witness. 74 Wis. 470; 102 Ga. 319; 40 L. R. A. 84.

McCULLOCH, J. Eugene Morrow, a young man twenty years of age, sues the railway company for damages on account of having been forcibly ejected from a passenger train and shot with a pistol by one who is alleged to have been a special watchman employed by the company. A judgment for damages in the

sum of one thousand dollars was recovered against the company, and it appealed to this court.

The event which gave rise to this litigation occurred at the station of Hoxie, Arkansas, where appellant's railroad crosses the railroad of another company, and where extensive yards are maintained by appellant. Appellee and his younger brother and two other boys were stealing a ride on a passenger train, and the fireman, on payment of twenty-five cents each to him, permitted them to ride on the tender of the engine. Appellee and his brother had ridden in the passenger coach of another train, paying the fare, from St. Louis to Poplar Bluff, but were attempting to steal a ride on this train from Poplar Bluff to Newport. When the train reached Hoxie, W. F. Gilkerson and Tom McMillan ejected the boys from the train, and in doing so McMillan shot and wounded appellee with a pistol. The evidence tends to show that the shooting was done wilfully and without provocation, and that Gilkerson encouraged McMillan to do it. Gilkerson was town marshal of Hoxie, and McMillan was his deputy as well as constable of the township in which Hoxie is situated. It is contended on behalf of appellee that Gilkerson and McMillan were employees of appellant as watchmen, and that they were acting in that capacity when they ejected the boys from the train and shot appellee.

At the time of the injury complained of Gilkerson was the holder of a pass from appellant allowing him to ride on trains, and McMillan used the pass once, signing Gilkerson's name to auditor's slip or receipt. The pass shows on its face that it was issued to Gilkerson as an employee of the company as special watchman.

The only testimony, except the pass itself, bearing on the relationship between Gilkerson and McMillan and the railway company was that of Gilkerson, who said that J. J. McHugh, a special agent of the company, arranged with him to give special attention to the company's property and agreed to send him the pass. His testimony on that point is as follows:

"McHugh came to me, and says, 'Gilkerson, I want you to do some little special work for me.' I says 'Mack, I have got more than two men can do;' and he says, 'My business is so I can't be here, and they are just tearing this yard up, breaking in the cars

and getting produce of different kinds, bums burning up the fence.' And I says to him, I says, 'That is in my jurisdiction.' I says, 'It is in the corporation.' I says, 'I have to go through there anyway.' And he says, 'That is what I know. Now, I can make it worth your while to give this your special attention;' says, 'It will save me a lot of trouble.' I says, 'What can you pay?' He says, 'I can't pay you anything in way of price, but can get you a pass, which will be of advantage to you if any of the boys get away; you could go after them. Later on we expect to hire a man, but at the present time can't pay any money.' I says, 'I will accept it; I have to be here anyway.' And he says, 'That closes the bargain. Look out; I will have you a pass here in a few days.' That the pass came, and he worked ahead, gathering the bums up, and when McHugh would come down he would report to Mr. McHugh and tell him how many he had gotten; just as if he was working for him by the month. That McHugh dropped out, and Mr. Stanley was his successor, and that he told Mr. Stanley that the bums were getting so numerous and thick he would not go down in the yards; that he was afraid to go down there, and that he told Stanley and McHugh he would have to have some one to go down there with him. Mr. McHugh said, 'Here is your deputy; what is the matter with him?' and that he told him McMillan did not feel disposed to go down there for nothing; that McHugh said he could do McMillan just like he was doing him (witness.) That that buoyed McMillan up, and he went to helping him. That he went to McHugh for a pass for McMillan, and was told that he could not get but one, but that he could ride on Gilkerson's pass."

Appellant requested the court to give the following instruction which was refused: "The issuing of the pass in question with the understanding that it was only to encourage Gilkerson as city or town marshal to perform his official duties as such officer with reference to any property of the defendant railway company, or even if it was to be special compensation for special attention to those things which would come in the line of his duty as town marshal, would not constitute Gilkerson an agent of the defendant railway company."

It is doubtful whether the evidence is sufficient to establish the fact that Gilkerson or McMillan were employees of the rail-

way company at all, or that they were acting as agents of the company when they ejected appellee from the train and shot him. As the case is to be reversed, and the evidence may be different at the next trial, we express no opinion as to its legal sufficiency.

It is plain, however, that the refused instruction quoted above correctly stated the law applicable to the case, and it should have been given. If Gilkerson and McMillan were only acting in the performance of their duties as public officials, the railway company was not responsible for their acts, even though they exceeded their authority; and if the company gave them a pass merely to encourage them in the performance of their duties as public officers, that did not constitute them the agents of the company, so as to make it responsible for their acts. *Railway Company* v. *Hackett,* 58 Ark. 381; *Chicago, R. I. & Pac. Ry. Co.* v. *Buchanan,* 87 Ark. 524.

The evidence warranted the jury in finding that these men were not employed by the railway company, but that the pass was issued to them merely to encourage them to discharge their official duties with reference to the company's property. The instruction does not, as contended by counsel for appellees, assume the existence of these facts, but leaves it to the jury to say whether or not they existed.

No other instruction given by the court covered this phase of the law applicable to the case, and the error in refusing to give it was therefore prejudicial.

Reversed and remanded.