RAILWAY COMPANY *v.* HACKETT.

Opinion delivered January 20, 1894.

1. *Deputy sheriff—Powers.*

A railroad company cannot escape liability for the wrongful act of a night watchman engaged to guard its property, on the ground that such watchman was also a deputy sheriff; since an officer of the law cannot engage, as such, to guard the property of a private individual or corporation, not in the custody of the law.

2. *Liability of master for servant's torts.*

A railroad company is liable for the wilful and malicious act of a night watchman in its employ, in shooting another, if he was acting in the course of his employment, although he exceeded his authority.

3. *Evidence—General reputation.*

A master is charged with knowledge of the general reputation of a watchman as to recklessness and unfitness for his position, where it is a matter of common knowledge in the county, and he has held the position for several years.

4. *Evidence—Objections.*

Where specific objections are made to testimony, all objections not specified are waived.

5. *Irrelevant evidence—When not prejudicial.*

Plaintiff's deposition was read in his behalf. Over defendant's objection, testimony explaining plaintiff's absence at the trial was introduced. *Held*, that under the circumstances, the testimony, while improper, was not prejudicial.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

Action by Thomas Hackett against the St. Louis, Iron Mountain & Southern Railway Company to recover for personal injuries. The facts appear in the following statement by the court :

The evidence tended to show that the appellant railway company had in its employment, as night watchman, Pat Gallagher, who had served the company in that capacity for about nine years before the occurrence which is the foundation of this action, and, that, at the time of the occurrence, he was on duty as night watchman for the company ; that it was the duty of the watchman to protect the company's depot, warehouse, buildings and cars at the foot of Rock street, in the city of Little Rock. That Gallagher, the watchman, might have authority to make arrests, he had been duly appointed, and was, a deputy sheriff of Pulaski county, in said State, at the time the shooting occurred which is referred to in the complaint.

On the night of April 7th, 1890, while Gallagher was on duty as night watchman for the company, at about 10 o'clock P. M., and while he was in a room upstairs near the railroad track, he heard a noise which he thought was on one of the company's tracks, which he supposed proceeded from the rattling of chains, when a clerk said, "Somebody is breaking into the cars." Gallagher, with his lantern, hurried down stairs, and saw two men standing off on one side. Proceeding to the point whence the noise came, he found the appellee, Hackett, standing up, and said to him, "What are you

doing here?" The appellee had gone in between some cars, at the freight depot at the foot of Rock street, to attend to a call of nature, and had just got through, when Gallagher said, " G—d— you, I have been looking for you some time," when the appellee asked what was the matter, and Gallagher replied : " You fellows have been doing this thing long enough, and I want you to come with me." Appellee replied, "All right ; wait till I button up my clothes, and I will go any place with you you want me to go." Gallagher then said "Come on," and appellee replied, "All right ; I will go," and took a step toward Gallagher, when Gallagher fired a pistol at the appellee, and inflicted upon him a severe injury, the ball from the pistol taking effect in the appellee's neck, from which appellee fell over against a car, and exclaimed, " Good God ! What did you do that for ?" Gallagher replied, " Come on, G—d— you, or I will blow the top of your head off." About this time two policemen arrested the parties. Gallagher had on, when arrested, two derringers and a navy-six pistol. The cars where appellee was found by Gallagher were loaded with citizens' merchandise ; and the seals of cars had sometimes been broken at the depot, and arrests had been frequently made there of persons for interfering with the seals and cars. The evidence tended to show that Gallagher was appointed deputy sheriff because he was night watchman for the railroad company, and that he never reported to the sheriff, or performed any duties generally, as deputy sheriff ; that his salary of $50 per month was paid by the railroad company ; and that he gave no bond as deputy sheriff, and was never ordered on duty by the sheriff ; and that, in issuing his commission, the sheriff did not expect to control him, or have him subject to his orders, but that the commission was given him to authorize him to make arrests, if necessary.

*Dodge & Johnson* for appellant.

1. The appointing and commissioning of a deputy sheriff in accordance with the law, and assigning the same to duty for the purpose of maintaining order on the premises of a railway corporation, and for the protection of its property, makes said deputy a State officer, and the corporation is not liable for the wrongful arrest or for any injuries inflicted while such officer is making an arrest in pursuance of his duties as an officer of the law. Mansf. Dig. secs. 6318, 6319, 6320 to 6325; 20 Atl. Rep. (Md.) 189; 16 S. W. Rep. 444; 34 A. & E. R. Cases, 309; 51 Md. 295, 298; 59 Iowa, 59.

2. Each sheriff in Arkansas may appoint one or more deputies for whose official conduct he shall be liable. Gallagher was a State officer, for whose acts as such the defendant was not liable. Mansf. Dig. sec. 6318. The sheriff alone is liable. 42 Vt. 332; 56 Me. 211; 2 N. H. 184; 15 Mass. 200; 1 Pick. 271; 42 Vt. 341; 17 Mass. 246; 12 *id.* 449; 1 Mass. 534.

3. The testimony of Newland and Sam Davis as to Gallagher's reputation was incompetent. No foundation was laid by showing that the railroad company knew Gallagher's reputation. 1 Greenleaf, Ev. sec. 54; 3 Bibb, 192; 2 Bibb, 286; 2 B. & P. 532; 5 S. & R. 352; 10 *id.* 55; 23 Pa. St. 424; 24 *id.* 408. G. W. Shinn's testimony and Hackett's letter should not have been admitted.

4. Hackett was guilty of a misdemeanor in trespassing upon the grounds of defendant for such a purpose. It may not be a statutory offense, but it is a common law offense. Mansf. Dig. secs. 566–7; 48 Ark. 59; 2 Am. Crim. Law, sec. 2002; *Ib.* sec. 2003. It was not necessary to have a warrant. Mansf. Dig. sec. 2412; 1 Am. & Eng. Enc. Law, p. 734 and notes; 1 Russell Crimes (9 Am. ed.), 808.

5.   A principal is not liable for the malicious and wilful acts of his servant, done without his knowledge or assent, though while in his employ.   43 N. Y. 569; 47 *id.* 128 ; 51 *id.* 298 ; 73 N. Y. 548 ; 92 Ind. 462 ; 61 Iowa, 574.

*Sam W. Williams* and *Geo. W. Shinn* for appellee.

1.   Gallagher was the watchman of defendant, and his commission was merely given him to enable him to bear arms.   He was not an officer of the State, nor was the sheriff responsible for his acts.   The facts of this case differ from 20 Atl. Rep. 189.   The distinction between independent trespasses and the acts done in the line of duty by servants is settled by 3 Clif. 416.   See Thomps. on Carriers of Passengers, p. 363 ; 69 Miss. 245 ; 13 Fed. Rep. 116.   The allegations of the complaint put in issue the character of Gallagher for competency, soberness and civility, and testimony as to his general charactor was competent.   1 Gr. Ev. secs. 50, 54, etc.; 38 Pa. St. 104.   Whether Gallagher acted in his *ostensible* capacity as a deputy sheriff, or in his real capacity as watchman for appellant, was a question of fact for the jury.   48 Ark. 177.   An agent may be an officer, and also be one for whose acts the company is liable.   28 A. & E. R. Cases, 138; Cooley on Torts, p. 397 ; 22 S. W. Rep. 488.   Corporations are liable for the torts of their agents or servants while in their employment and in the performance of their duty, or within the scope of their duties or employment.   See Cooley on Torts, p. 120 ; Redfield on Railways (3d ed.), 510; 14 How. 468, 483 ; 27 Vt. 110 ; 104 Mass. 117 ; 32 N. J. 328 ; 19 Ohio (N. S.), 162 ; 21 *id.* 518 ; S. C. 8 Am. Rep. 78 ; 27 Md. 277 ; 57 Me. 202 ; 2 Am. Rep. 39 ; 16 *id.* 409 ; 19 Ill. 353.

HUGHES, J., (after stating the facts).   We have endeavored to fully examine and consider each of the

instructions given by the court in this case, and it is our opinion that, taken together, they correctly state the law applicable to this case; that they contain no reversible error.

1. Authority of deputy sheriff to guard property.

The counsel for the appellant state, in their brief, in substance, that they base the chief ground of their objection to the verdict upon the court's refusal to declare the law as stated by them in instruction numbered five, which the court refused.* This instruction is erroneous, in that it assumes that a deputy sheriff, as such, might engage to guard the property of the railroad company. An officer of the law cannot engage, as such officer, to guard the property of a private individual or corporation not in the custody of the law. The duties of a sheriff are prescribed by law. Such part of this instruction as correctly states the law is covered by the instructions given by the court. There was no error therefore in refusing this instruction.

2. Liability of master for servant's torts.

The fourth instruction asked for by the appellant railway company, and refused by the court, is erroneous, as it assumes that, if Gallagher inflicted the injury wilfully and maliciously, the company is not liable for damages resulting from the injury. Such, in our opinion, is not the law, according to the weight of authority. The intention with which Gallagher acted cannot affect

---

* The fifth instruction asked by plaintiff, and refused by the court, is as follows:— " 5. If the jury find from the evidence that Pat Gallagher was a deputy sheriff duly appointed; that, as such, he was engaged in guarding the property of defendant railway company at its depot in Little Rock; that the injury complained of was inflicted upon plaintiff by said Gallagher, while in the discharge of his duties as such deputy sheriff, then you are instructed that the railway company cannot be held liable therefor, even though you should further find from the evidence that said Gallagher overstepped the bounds of his authority as such deputy sheriff, and that the railway company was paying, and had agreed to pay, the wages of said Gallagher as deputy sheriff."

the liability of the railway company, though it might affect the amount of the damages. *Cleghorn* v. *N. Y. Cent. & H. Ry. Co.* 56 N. Y. 47. The question is, was Gallagher, at the time he fired the pistol shot, acting in the course of his employment as night watchman for the railway company? If he was, the company is liable in damages for any wrongful act of his in the course of his employment, resulting in injury to another, though he exceeded his authority as such night watchman. If the act was done by him in the service of the company, in the course of his employment, and injury resulted therefrom, the company is liable in damages resulting from the injury, if the act was wrongful, or performed in such a negligent manner that its negligent performance caused the injury.*

Of course, if the act causing the injury was outside of the course of the servant's employment—disconnected with the service of the company—then the company would not be liable. The fact that Gallagher had been appointed a deputy sheriff, to enable him to make arrests, because he was watchman for the railroad company, could not exempt the company from liability for his acts as such watchman. If the act had been committed in the discharge of, or in the endeavor to discharge, his duties as deputy sheriff, though wrongful and in excess of his authority as deputy sheriff, the railroad company would not have been liable, though the deputy sheriff and his principal, the sheriff, might have been. But this case presents no such aspect. *Ward* v. *Young*, 42 Ark. 542; *Brill* v. *Eddy*, 115 Mo. 596, 22 S. W. 488; Cooley on Torts, p. 307; *Krulevitz* v. *Eastern R. Co.* 28 A. & E. R. Cases, 138; *Priester* v. *Augley*, 5 Rich. S. C. 44; Wood's Master and Servant, secs. 279, 280,

---

*On the question of the liability of a master for assaults by a servant, see note to *Davis* v. *Houghtelin* (Neb.), 14 L. R. A. 737.  (Rep.)

and p. 543, *et seq;* *Chapman* v. *N. Y. etc. R. Co.* 33 N. Y. 369; Wood's Master and Servant, p.p. 303, 568 and 571; *Weed* v. *Panama R. Co.* 17 N. Y. 362; Wood, Master and Servant, sec. 299; *King* v. *Railroad Co.* 69 Miss. 245; 2 Wood, Ry. Law, p. 1206; *Green* v. *Omnibus Co.* 7 C. B. (N. S.) 290; *Garretzen* v. *Duenckel*, 50 Mo. 104; *Nashville etc. R. Co.* v. *Starnes*, 9 Heisk. 52.

While we do not intend to enter upon an extended discussion of the principles stated, we think that a careful examination of the authorities will sustain fully the conclusions we have reached as to the law of this case.

It is true that there has been a difference of opinion in the courts upon the question, whether a master is liable at all for the willful and malicious acts of his servant, resulting in injury, under any circumstances whatever, unless where they were in violation of a contract of carriage, or done by the master's express command; yet the better reason and weight of authority seem to be that where such acts are performed about the master's business, in the course of the servant's employment, the servant and master are both liable.

The principal case relied upon by counsel for appellant, *Tolchester Beach Improvement Co.* v. *Steinmeier*, 20 Atlantic (Md.), 189, is not like the case at bar, and does not contravene the principles announced. In that case it clearly appeared that the officer who did the injury was not acting in the line of his employment, but was seeking only to enforce the criminal law, as he believed; and as he was an officer, though he had accepted private employment from the company, the company was not liable for his official acts. There is a correct line of distinction in these case, which the circuit court seems to have followed in its instructions, leaving the questions of fact properly to the jury. It was not for the court to tell the jury that Gallagher, when he fired the shot, was or was not acting in his capacity of deputy sheriff,

or that he was or was not acting in the course of his employment by the company as night watchman. These are questions of fact for the jury to determine, and we think the evidence warrants their verdict. The instructions asked on the part of Gallagher, and refused by the court, we have not considered, as Gallagher has not appealed.

The objection to the testimony in regard to the character of Pat Gallagher, the watchman, as to reck-lessness and unfitness for his position, was based solely upon the ground that it was not shown that the railway company ever had any knowledge of Gallagher's reputation. It was shown that he had been in the employment of the railway company as watchman about nine years, and that his reputation was generally known, a matter of common knowledge in the county. This is sufficient to show that the company ought to have known his reputation, and to charge it with knowledge of it. 1 Whart. on Evidence, sec. 48.

3. Notice of general reputation.

Where specific objections are made to testimony, all objections not specified are waived. *Evanston* v. *Gunn,* 99 U. S. 665. The testimony was clearly incompetent, but all objections to its competency were waived, other than the specific objection stated. *Dunham* v. *Rackliff,* 71 Me. 349 ; *Porter* v. *Seiler,* 23 Pa. St. 424.

4. When objections to evidence waived.

The testimony of G. W. Shinn as to the absence of Hackett from the trial, and the introduction of the letter of Hackett, were irregular,* but Hackett's deposition

5. Irrelevant evidence held not prejudicial.

---

*Plaintiff's deposition was read at the hearing of the case. G. W. Shinn, one of plaintiff's attorneys, was placed upon the stand, and asked the following question, viz:

Q. " Why is Hackett not here to-day ?

A. " He wrote me, and I wrote back to Mr. Hackett it was not necessary for him to come, that his deposition was here. This is what he wrote me :

" PINE BLUFF, ARK., December 9, 1891.

" Yours of December 7th received, and I would like to know if it is necessary for me to be there at the trial. If it is not, let me know by Monday, or as near after as you can. I think it will be impossible

had been taken, and was read to the jury, and there was no proof that Hackett was in the employment of the defendant company at the time the letter was written. We cannot see that the company could have been prejudiced by this testimony and letters, and we think that, though improper, the admission of them was not reversible error.

The judgment is affirmed.

---

for me to come without getting discharged, as I spoke about it to-day to see. If it is not really necessary that I should come, let me know and oblige."

To the admission of the above testimony defendant objected.