CITY OF DE SOTO, Appellant, v. CARLYLE HUNTER, Respondent.

St. Louis Court of Appeals, November 16, 1909.

1. **MUNICIPAL CORPORATIONS: Disturbance of Peace: Police Officer Within Protection of Statute.** A police officer is within the protection of an ordinance or statute which denounces the willful disturbance of the peace of any person, as are other citizens of the State or city.

2. ———: ———: ———: **Evidence: Prima-Facie Case.** Loud, offensive and indecent language and epithets directed toward a policeman in the presence of others, on a public street of a city or town, sufficient to inspire fear or terror and arouse the passions or destroy the equanimity and repose of mind of the person abused, will amount to a disturbance of the peace of that person, and evidence tending to prove such facts makes a prima-facie case for the jury.

3. ———: ———: **Evidence: Inference that Peace was Disturbed.** In a prosecution for violation of a municipal ordinance denouncing the willful disturbing of the peace of any person, evidence that defendant in the presence of a number of persons used loud, profane, indecent and offensive language in addressing a police officer and an unknown person was sufficient to warrant the submission of the question to the jury whether or

not defendant's conduct was calculated to disturb and did disturb the peace of such persons, notwithstanding all of them, with the exception of the police officer, testified their peace was not disturbed.

### Separate Opinion by Reynolds, P. J.

4. ——: ——: ——: **Peace not Disturbed: Invading Province of Jury.** In a prosecution for violation of a municipal ordinance denouncing the willful disturbing of the peace of any person, where there was evidence tending to prove defendant, in the presence of a number of persons, used loud, profane, indecent and offensive language in addressing a police officer and an unknown person, evidence of such persons that their peace was not disturbed by defendant's language was incompetent, for the reason it was the statement of a conclusion by the witness on the very fact the jury was to find.

5. ——: ——: **Police Officer Within Protection of Laws.** While police officers are public servants, they are none the less citizens, and are entitled to the same protection in the enjoyment of their rights that every other citizen is.

Appeal from Jefferson Circuit Court.—*Hon. Joseph J. Williams,* Judge.

REVERSED AND REMANDED.

*J. G. Berkeley* for appellant.

(1) The court erred in overruling plaintiff's motion to dismiss defendant's appeal, the action being a civil action. Billings v. Brown, 106 Mo. App. 243; DeSoto v. Brown, 44 Mo. App. 148; State v. Witzel, 130 Mo. 600; Stevens v. Kansas City, 140 Mo. 460. (2) The court erred in giving the jury a peremptory instruction to acquit the defendant. State v. Foger, 29 Mo. 416; State v. Parker, 39 Mo. App. 116; State v. Rumsey, 52 Mo. App. 668. (3) The complaint is sufficient. It describes the offense in the language of the section of the ordinance relating to peace disturbances. The gist of the offense is a disturbance of the peace. A complaint of this kind is not to be scanned so closely as if the proceedings were of a strictly crim-

inal nature. Billings v. Brown, 106 Mo. App. 343; DeSoto v. Brown, 44 Mo. App. 142; State v. Witzel, 130 Mo. 600; Stevens v. Kansas City, 146 Mo. 460; State v. Rumsey, 52 Mo. App. 668; State v. Foger, 29 Mo. 416; State v. Parker, 39 Mo. App. 116. (4) The prosecution by a city for the violation of its ordinances is a civil action and the sufficiency of the complaint must be determined by the same rules that govern civil actions. City of St. Louis v. Schoenbush, 95 Mo. 618; City of St. Louis v. Vert, 84 Mo. 204; Kansas City v. Clark, 68 Mo. 588; Kansas City v. Muhlbach, 68 Mo. 638; City of Marshall v. Standard, 24 Mo. App. 192; Billings v. Brown, 106 Mo. App. 243; Ex parte Hallwell, 74 Mo. 395; City of St. Louis v. Knox, 74 Mo. 79; State v. Witzel, 130 Mo. 600; Stevens v. Kansas City, 146 Mo. 460. (5) The scope of the section 432 of Ordinance 244 is broad enough to apply to the offense proven. 1 Dillon's Municipal Corporations (4 Ed.), sec. 407, p. 475; Delaney, 43 Cal. 478 (1872); St. Charles v. Meyer, 58 Mo. 86. (6) A police officer's peace can be disturbed.

*H. B. Irwin* for respondent.

(1) A peace officer's personality is merged in his official character, and a city marshal's peace cannot be disturbed by loud and offensive language. Salem v. Coffey, 113 Mo. App. 675. (2) The complaint is insufficient and states no cause of action. State v. Hauck, 109 Mo. 658; State v. Reike, 62 Mo. 42; State v. Sides, 64 Mo. 383; Sherwood's Com. on Crim. Law, 649; 1 Bishop, Crim. Prac., secs. 81, 86, 88, 519, 566; Sherwood's Com., 646.

NORTONI, J.—This is a prosecution for a disturbance of the peace under a city ordinance. At the conclusion of the testimony on the part of the city, the court peremptorily directed a verdict of acquittal and

the city prosecutes the appeal. The material portion of the ordinance in evidence, a violation of which is alleged against the defendant, is as follows:

"Whoever shall, in this city, wilfully disturb the peace of any person or persons by violent, offensive, tumultuous or obstreperous conduct or carriage, or by loud or unusual noises, or shall use toward another any indecent, profane, obscene or offensive language calcu- lated to provoke a breach of the peace, . . so that others are disturbed thereby, shall be deemed guilty of a mis- demeanor," etc.

The complaint lodged against the defendant and on which he was tried in due form charged that the defendant did, first, unlawfully and wrongfully and wilfully disturb the peace of Robert Lanham, Eddie Eichelberger, Willie Burrus, Raymond Eichelberger, and the public generally, by loud and unusual noises, by violent, tumultuous and obstreperous conduct and carriage; and, second, by using to and toward others, whose names are to the affiant unknown, profane, of- fensive and obscene language calculated to provoke a breach of the peace, etc. The testimony introduced on the part of the city to sustain the charges referred to is to the effect that the defendant was scuffling with some other boys on a public street and principal thor- oughfare of the city of DeSoto and for some reason commenced talking, loud and profane. The police of- ficer, Robert Lanham, testified that he heard him more than a block away. Other witnesses gave testimony to the effect that they heard his profanity across the street. Some testimony goes to show that the defend- ant was cursing the Eichelberger boy with whom he had been scuffling and other testimony goes to show that he was cursing some person spoken of in the tes- timony as an umbrella man. However, the umbrella man was not identified nor was he a witness in the case. We gather from the testimony that he was pos-

sibly a traveling vendor or mender of those articles. The police officer, Lanham, upon hearing the profane discourse a block away was attracted thereto and came towards the defendant. Of the defendant's conduct and touching what he said, the police officer testified as follows:

"He called me a G-d d-d s-n of a b— and a G-d d-d b—, and was talking all kinds of names like that up there before I went up there. Q. When you got there what kind of language was he using? A. The first I heard was he was calling somebody a s-n of a b—."

The police officer further testified that he heard the defendant using vile language towards the umbrella man referred to, the question and answer touching the matter being as follows:

"Q. You heard him using this vile language while he was talking to this umbrella man? A. Yes, sir."

The police officer was asked if the defendant's conduct and vile language disturbed his peace, and he answered that it did. While all of the evidence on the part of the city tended to prove that the defendant cursed and swore for a considerable period of time on the public street, some of it is to the effect that he was not cursing anybody particularly. One witness said, "I don't suppose he was cursing anybody particularly unless it was the Eichelberger boy. They had been scuffling." The question was directed by the court to all of the witnesses as to whether or not the defendant's cursing and swearing disturbed their peace. Each witness, other than the police officer, answered in the negative, saying that his peace was not disturbed thereby. The police officer, however, said that his peace was disturbed.

From the arguments appearing in the briefs, we gather that the court directed a verdict for the defendant on the theory that as all of the witnesses for the city, other than the police officer, said their peace was not disturbed by the defendant's conduct, the city failed

to make out a case. The argument advanced in support of the judgment is that the police officer who testified his peace was disturbed was not within the protection of the ordinance. To quote from the defendant's brief, it is said that "the police officer was acting within the scope of his official duties and as such an official was not a person within the meaning of the ordinance. His personality was merged into that of his office as marshal."

Indeed, the case of Salem v. Coffey, 113 Mo. App. 675, is cited in support of the doctrine referred to. That case was decided by the Kansas City Court of Appeals, Judge ELLISON dissenting, a majority of the court holding that the peace of a police officer is not protected by the statute or an ordinance as the one now in judgment. According to the reasoning of that case, it is no offense for a citizen to call a police officer a G-d d-d s-n of a b— and otherwise abuse and vilify him. We are not persuaded thereby, but, on the contrary, believe that a police officer is within the protection of the statutes as are other citizens of the State or city. We believe loud, offensive and indecent language and epithets directed toward a policeman in the presence of others on the public street of a city or town sufficient to inspire fear or terror and arouse the passions or destroy the equanimity and repose of the mind of the person abused will amount to a disturbance of the peace of that person, and evidence tending to prove such facts is certainly sufficient to make a prima-facie case for the jury touching that question. Be this as it may, we are not persuaded that the mere fact that all of the witnesses, other than the police officer, said their peace was not disturbed was sufficient to authorize the court to direct a verdict for the defendant on the evidence to be found in this record.

In the city of St. Charles v. Meyer, 58 Mo. 86, the defendant was charged with having disturbed the peace and the Supreme Court held that it was competent to

introduce evidence on the part of the defendant to show that the noises made by the charivari party of which the defendants were members were slight and not sufficient to disturb the public peace. The court said the tendency of this evidence "was to weaken the force of the plaintiff's evidence showing the offensive character of the noises and their adaptability for a disturbance of the public repose." However, in that opinion it is said that if the object of such testimony was "to show by way of special defense that the persons testifying were not individually disturbed by the noises complained of such an object alone would be manifestly illegitimate."

From a careful reading of the case, we deduce the proposition that testimony to the effect that the language or conduct of the defendant actually disturbed the peace of any person or persons is not essential, as this is the real gravamen of the charge and the question for the jury to determine on all the facts and circumstances in proof. Indeed, in Salem v. Coffey, 113 Mo. App. 675, the Kansas City Court of Appeals declared such testimony to be incompetent, saying that whether or not a person's peace is disturbed is the gravamen of the charge and is therefore a question for the jury to determine. It is not necessary in this case to say that such testimony is incompetent, and the question is not decided. However, we entertain no doubt upon the proposition that it is not essential in a case where the language and conduct of the defendant is such as is shown by this record for the witnesses to testify positively that their peace was actually disturbed thereby. The facts in proof are certainly sufficient for the jury. A disturbance of the peace being the gravamen of the charge, whether the defendant's conduct was calculated to disturb and did disturb the peace of persons there assembled is for the jury to say. [Keller v. The State, 25 Tex. App. 325; McCandless v. The State, 21 Tex. App. 411; People v. Murray, 61 N. Y. 406; 54 Hun.]

One paragraph of the complaint charges the defendant with violent, tumultuous and obstreperous conduct and carriage by using to and toward others, whose names are to the affiant unknown, profane, offensive and obscene language calculated to provoke a breach of the peace. Now, this charge falls within the language of the ordinance for it is made punishable thereby to use such language towards another as is calculated to provoke a breach of the peace. This charge possibly contemplates the conduct of the defendant towards the umbrella man referred to in the testimony. It appears from the record that no one knew who this umbrella man was but that there was a man present denominated by the witnesses as an umbrella man is beyond question, if the testimony is to be believed, and it appears from the testimony of the police officer that part of the vile and offensive language spoken was directed by the defendant to this unknown person.

It is obvious that the language such as detailed by the witnesses this defendant used towards this unknown umbrella man was calculated to disturb the peace of a person whether it did disturb his peace or not and that question should certainly have been referred to the jury. It was for the jury to answer whether or not such language used toward this unknown person was calculated to disturb his peace.

Manifestly, the violent and vituperative epithets applied by the defendant to Lanham, the police officer, were calculated to disturb the peace of a person even though he be a police officer and accustomed to more or less unkind remarks from boisterous individuals.

The judgment will be reversed and the cause remanded. *Goode, J.,* concurs. *Reynolds, P. J.,* concurs in result in separate opinion.

## SEPARATE OPINION.

REYNOLDS, P. J.—I concur in reversal but do not concur in holding that it is not necessary in this case to hold that the testimony of witnesses, who were permitted to answer the direct question of whether their peace had been disturbed by the profanely vulgar language attributed to the defendant, and who, in answer to this, said it had not, was incompetent. I have no doubt whatever on that; and think we owe it to the trial court and to the defendant even, to pass on it and so prevent a possible further appeal. I have no hesitancy in saying that such a question was improper in this case and that the testimony sought to be and which was elicited by it called for conclusions by the witnesses on the very fact the jury was to find, and it was therefore incompetent.

Nor am I willing, by silence, to give any support to the idea, advanced in cases referred to in the opinion, that a policeman or constable is, by his office, so far removed from citizenship as not to be within "the peace of the State." I see no more reason for applying that rule to him than to a judge, as was done by the Supreme Court of the United States in the great case of In re Neagle, 135 U. S. 1. A policeman is as much an officer as a judge or justice and as much entitled to the protection of the laws of the land. Public officers are public servants, it is true, but they are none the less citizens and entitled to the same protection as is every citizen, in the enjoyment of every right, one of the most important and dearest of which is, the right to be within "the peace of the State," which here means, the protection of its laws as against the vulgarity and profanity of public nuisances.