JAMES MEYERS JR. *v.* STATE OF ARKANSAS

5738                                               484 S.W. 2d 334

Opinion delivered September 11, 1972

*John F. Gibson Jr.,* for appellant.

*Ray Thornton,* Atty. Gen., by: *James A. Neal,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Upon trial de novo, on appeal from the Municipal Court of Little Rock, appellant James Meyers, Jr., was convicted of breach of the peace in violation of Ark. Stat. Ann. § 41-1412 (Repl. 1964) and resisting arrest in violation of Ark. Stat. Ann. § 41-2801 (Repl. 1964). On this appeal he contends that the evidence was insufficient to support a conviction on § 41-1412 and that the court erred in applying § 41-2801 to an off-duty policeman attempting an arrest for a misdemeanor without a warrant.

We deem the evidence sufficient to support the conviction for breach of the peace when it is viewed in the light most favorable to the state. In pertinent part, Ark. Stat. Ann. § 41-1412 (sometimes known as the "Peace and Tranquility Act") provides:

> If any person shall make use of any profane, violent, vulgar, abusive or insulting language toward or about any other person in his presence or hearing, which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault, shall be deemed guilty of a breach of the peace, and upon conviction thereof shall be punished by a fine of not less than five [$5.00] nor more than two hundred dollars [$200] or by imprisonment in the county jail for not less than one [1] nor more than six [6] months, * * *

Mike Carter, a patrolman for the Little Rock Police Department, was employed as a security guard for the

Downtowner Motel in Little Rock from 10:30 p.m. on August 7, 1971, until the early morning hours of August 8. He was not assigned to regular duty with the police department during these hours, and was not paid by the city for this work.

The Arkansas High School All-Star Football Game was played on the evening of August 7. Meyers and a group of youths, who were in Little Rock on account of the game, had gathered in Room 208 at the motel. Carter said that around 11:00 p.m. persons gathered around this room were drinking beer, laughing and talking loudly and congregating around the front door so as to block the balcony, which constituted the only passageway to and from the rooms on that floor. He testified that he advised these persons to remain inside their rooms and off the balcony. Carter stated that each time he passed this room at intervals of 10 or 15 minutes, he would have to advise from two or three to six or seven of these individuals to get back in the room because they were loud and boisterous. On some of these occasions, but not all, according to Carter, Meyers was among those out on the balcony. Finally, about 12:45 a.m. on August 8, Carter and Officer Forrest, another policeman employed by the motel, approached Room 208. Both officers were in uniform and wearing badges. The officers advised three or four of the party (including Meyers) to go back inside the room and that they would be arrested unless they remained inside. As one member of the party started closing the door after those on the balcony had gone inside the room, Carter heard Meyers, who was standing at the back of the room, say "Get f----d, you g-- d--- pigs." Officer Carter testified that he prevented the closing of the door and advised all of the occupants of the room, four males and two females, that they were under arrest. Carter called for aid and he and Officer Forrest and Officer Dozier escorted those arrested to an elevator. Five of them entered on Carter's instruction, but Meyers did not. Carter said that he took Meyers by the right arm and told him to go into the elevator, but that Meyers jerked away and swung at Carter. Carter said that he dodged and that the two fought briefly. After he struck Meyers three times with a "slapper," Meyers said "Don't hit me anymore, I'll go." Meyers went into the elevator, and was transported to the police station.

Officer Forrest corroborated Carter's testimony for the most part. Forrest heard the words "s.o.b." and "pig" called out by someone in the room. He identified Meyers' voice as that of the speaker. Forrest heard a scuffle outside the elevator and saw Carter and Meyers fighting each other for a few seconds, but because he was inside the elevator did not observe the cause of this commotion. Officer Dozier was called to assist the other officers after the arrest was made. He heard Meyers refuse to go into the elevator when instructed to do so by Carter, and saw Carter reach for his "slapper" and Meyers raise his left arm in a manner as if he were preparing to strike Carter.

Dianne Coulter and David Reeves, two of the occupants of the room and good friends of Meyers, heard someone yell "pig" after the officer had directed the party to stay in the room and close the door. These witnesses and others contradicted Carter and Dozier on other points. Meyers also contradicted the testimony of these officers, but stated that he had taken the blame for calling the officer a "pig" only because Carter had already hurt Johnny Clark, another member of the party whom the policemen had accused. Of course, in determining the sufficiency of the evidence, we must view it in the light most favorable to the state, as we have.

Appellant argues that the words "or to cause a breach of the peace or an assault" are indicative of the object of the law to prevent disturbances, i.e., breaches of the peace or assaults, not to prevent specific language from being spoken. Upon this premise, he postulates that Meyers could not be guilty of violation of this statute under any view of the testimony because Carter testified that the words did not make him angry, and it is not comtemplated that one who is a police officer would assault a person in custody by reason of a remark addressed to him. He cites and relies upon *People* v. *Lukowsky,* 94 Misc. 500, 159 N.Y.S. 599 (1916).

We have consistently held that the question whether the language used was, in its common acceptation, *calcullated* to arouse the person addressed to anger to produce a breach of the peace is one for the jury. *Ruffin* v. *State,* 207 Ark. 672, 182 S.W. 2d 673. We have recognized that the question would depend upon factors such as the relation of the parties, the circumstances under which the language was

used, and the manner of the speaker. *State* v. *Moser,* 33 Ark. 140. The particular question posed by appellant does not appear to have arisen in this state. The case relied upon by appellant does lend some support to his argument, but it is a decision by a single judge of the Court of General Sessions of New York County which appears to be contrary to the weight of authority. Although there are other cases in the State of New York which seem to follow the tenet expressed in *Lukowsky,* its reasoning has been described as fictional. See *City of St. Paul* v. *Morris,* 258 Minn. 467, 104 N.W. 2d 902 (1960), cert. denied, 365 U.S. 815, 81 S. Ct. 696, 5 L. Ed. 2d 693 (1961). The Minnesota Court pointed out that this reasoning has been vigorously repudiated in other jurisdictions and that decisions in New York on the question do not consistently follow the doctrine. See also, e.g., *People* v. *Sadowsky,* 149 Misc. 583, 267 N.Y.S. 762 (1933); *People* v. *Clarke,* 12 N.Y.S. 2d 8 (1939); *People* v. *Jones,* 63 N.Y.S. 2d 399 (1946); *Lippert* v. *State,* 207 Misc. 632, 139 N.Y.S. 2d 751 (1955); *People* v. *Fenton,* 102 Misc. 43, 168 N.Y.S. 725 (1917).

Other courts have held that the fact that abusive language is addressed to a policeman or other law enforcement officer does not prevent it from constituting a violation of the statute. *Lane* v. *Collins,* 29 Wis. 2d 66, 138 N.W. 2d 264 (1965); *Myers* v. *Dunn,* 126 Ky. 548, 104 S.W. 352, 13 L.R.A. (n.s.) 881 (1907); *State* v. *Chaplinsky,* 91 N.H. 310, 18 A. 2d 754 (1941). aff'd 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); *City of St. Petersburg* v. *Calbeck,* 121 So. 2d 814 (Ct. App. Fla. 1960); *City of DeSoto* v. *Hunter,* 145 Mo. App. 430, 122 S.W. 1092 (1909). Since we feel that these courts follow the better reasoning and express the weight of authority, we reject the reasoning and doctrine of *Lukowsky.* While we fully recognize that police officers must exercise considerable restraint in the performance of their duties, we agree with the Supreme Court of Minnesota that there is no sound reason why a peace officer must be subjected to indignities that go far beyond what any other citizen might reasonably be expected to endure. This idea has also been expressed in New York in *People* v. *Fenton,* supra, where Mr. Justice Gibbs, affirming the conviction of two truck drivers for disorderly conduct, and holding that language addressed to a police officer was conduct tending to a breach of the peace, said:

Gratuitous insolence to police officers, tending to

cause disturbance and disorder upon a public highway, is far too commòn in this city and should not be encouraged. It seems to me that it tends to lessen the respect of the community for law and order, which the police officer in the legitimate discharge of his duties represents.

Since we do not consider appellant's theory on this point to be sound, we find the evidence sufficient as to the charge of breach of the peace. See also, *Hearn* v. *State*, 34 Ark. 550; *State* v. *Styfco*, 2 Conn. Cir. 610, 203 A. 2d 610 (1964).

In pressing his second point, appellant bases his argument upon a premise contrary to that upon which his discussion of the first point is founded. He says that he cannot be guilty of resisting arrest because Carter was not a policeman, but an employee of the motel. He relies upon *St. Louis, I. M. & S. Ry. Co.* v. *Hackett*, 58 Ark. 381, 24 S.W. 881. There we considered a jury instruction offered by a railroad company in the defense of an action brought by one who had been shot by a night watchman employed by the company to protect its depot, warehouse, buildings and cars at the foot of Rock Street in Little Rock, and who had been commissioned as a deputy sheriff, so that he could make arrests. The instruction assumed that a deputy sheriff could be employed as an officer of the law to guard the property of a private individual or corporation which was not in the custody of the law. We did not hold, or suggest, that one so employed did not have the power to make an arrest under proper circumstances. The language of the opinion clearly dispels any such idea. We said:

The question is, was Gallagher, at the time he fired the pistol shot, acting in the course of his employment as night watchman for the railway company? If he was, the company is liable in damages for any wrongful act of his in the course of his employment, resulting in injury to another, though he exceeded his authority as such night watchman. If the act was done by him in the service of the company, in the course of his employment, and injury resulted therefrom, the company is liable in damages resulting from the injury, if the act was wrongful or performed in such a negligent manner that its negligent performance caused the injury. Of course, if the act caus-

ing the injury was outside of the course of the servant's employment,—disconnected with the service of the company,—then the company would not be liable. The fact that Gallagher had been appointed a deputy sheriff, to enable him to make arrests, because he was watchman for the railroad company, could not exempt the company from liability for his acts as such watchman. If the act had been committed in the discharge of, or in the endeavor to discharge, his duties as deputy sheriff, though wrongful, and in excess of his authority as deputy sheriff, the railroad company would not have been liable, though the deputy sheriff and his principal, the sheriff, might have been. But this case presents no such aspect. * * * (58 Ark. at 387, 24 S.W. at 882.)

* * * The principal case relied upon by counsel for appellant, *Tolchester Beach Improvement Co.* v. *Steinmeier*, 20 Atl. (Md.) 189, is not like the case at bar, and does not contravene the principles announced. In that case it clearly appeared that the officer who did the injury was not acting in the line of his employment, but was seeking only to enforce the criminal law, as he believed; and as he was an officer, though he had accepted private employment from the company, the company was not liable for his official acts. There is a correct line of distinction in these cases, which the circuit court seems to have followed in his instructions, leaving the question of fact properly to the jury. It was not for the court to tell the jury that Gallagher, when he fired the shot, was or was not acting in his capacity of deputy sheriff, or that he was or was not acting in the course of his employment by the company as night watchman. These are questions of fact for the jury to determine, and we think the evidence warrants their verdict. (58 Ark. at 388-9, 24 S.W. at 883.)

For these reasons and those hereinafter discussed, we do not consider that case as controlling authority.

Arkansas Statutes Annotated § 41-2801 provides that if any person shall knowingly and wilfully obstruct or resist any sheriff or other ministerial officer in the discharge of any official duty in case of felony or any other case, civil or criminal, he shall be guilty of a misdemeanor. See

*Stuart* v. *State,* 222 Ark. 102, 257 S.W. 2d 372. A city policeman is a ministerial officer within the meaning of this section. *Drifoos* v. *City of Jonesboro,* 107 Ark. 99, 154 S.W. 196. A city policeman is a peace officer under our Criminal Code. Ark. Stat. Ann. §§ 43-403, 41-101 (Repl. 1964); *Drifoos* v. *City of Jonesboro,* supra. No exception is made for any time when the officer is not working a designated shift or when he is working for a private employer while off his regular duty. A city policeman may, upon view, arrest any person who may be guilty of any crime against the laws of the state. Ark. Stat. Ann. § 19-1706 (Repl. 1968). Further, it is his duty to suppress all breaches of the peace and to apprehend all persons in the act of committing any offense against the laws of the state. Ark. Stat. Ann. § 19-1705 (Repl. 1968). There is nothing in any of our statutes to restrict the right of a policeman to make an arrest at any particular time of the day, week, month or year or to limit his duty to do so to the hours designated for his regular work shift.

Other jurisdictions have held that the fact that a peace officer is employed and paid by public or private agencies other than those having direct responsibility for law enforcement at the time an offense is being committed, or is about to be committed, neither impairs his right to make an arrest or take appropriate action to prevent the crime nor relieves him of his duty as a police officer in that respect. *United States* v. *Hutchins,* 268 F. 2d 69, 83 A.L.R. 2d 447 (6th Cir. 1959); *Benedict* v. *Police Pension Fund Commissioners,* 35 Wash. 2d 465, 214 P. 2d 171, 27 A. L. R. 2d 992 (1950); *People* v. *Peters,* 18 N. Y. 2d 238, 273 N. Y. S. 2d 217, 219 N. E. 2d 595 (1966), aff'd 14 Misc. 2d 470, 254 N. Y. S. 2d 10 (1964), aff'd 24 App. Div. 2d 989, 265 N. Y. S. 2d 612 (1965), aff'd sub nom. *Sibron* v. *New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); *Washington* v. *New York City Housing Authority,* 24 N.Y. 2d 912, 249 N.E. 2d 481, 301 N.Y.S. 2d 642, aff'g 31 App. Div. 2d 700, 295 N.Y.S. 2d 845 (1969); *Simms* v. *State,* 167 Tex. Cr. R. 315, 319 S.W. 2d 717 (1958); *Monroe* v. *State,* 465 S.W. 2d 757 (Tex. Crim. App. 1971); *Bourque* v. *Lohr,* 248 So. 2d 901 (Ct. App. La. 1971). Statutes such as Ark. Stat. Ann. § 19-1712 (Repl. 1968) limiting the time when a city police officer may be required to work do not have the effect of limiting his right or duty to make an arrest during the hours or days when he is

not being required to devote his time to the performance of his official duties. See *Simms* v. *State,* supra. He is, in a sense, on duty 24 hours a day, seven days a week and is not relieved of his obligation to preserve the peace while "off duty." *Monroe* v. *State,* supra; *People* v. *Peters,* supra.

Since appellant has not demonstrated that the circuit court committed error in finding him guilty of the offenses, we must affirm the judgment.