Jeffrey L. RIDENHOUR *v.* STATE of Arkansas

CR 91-39                                   805 S.W.2d 639

Supreme Court of Arkansas
Opinion delivered March 25, 1991

*Ernie Witt*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Jeffrey Ridenhour, was arrested on December 23, 1988, and charged by police citation with driving while intoxicated. On September 13, 1989,

he filed a motion to dismiss on the ground the arresting officer did not meet the required minimum standards, and, therefore, any action taken by him was invalid. Before the motion was ruled upon, Act 44 of 1989 became law. That act provides that action taken by non-qualified officers "shall not be held invalid." The act expressly applies to pending cases. The trial court denied appellant's motion to dismiss, and appellant was found guilty. The sole issue raised by this appeal is whether the retroactive application of Act 44 of 1989 violates the Ex Post Facto Clauses of the United States and Arkansas Constitutions. We hold that the act is not a violation of the ex post facto doctrine.

The officer who issued the citation did not meet the minimum qualifications. Further, the citation was the only instrument charging appellant with the offense of driving while intoxicated. Prior to the enactment of Act 44 of 1989, Ark. Code Ann. § 12-9-108(a) (1987), provided that any action taken by an officer who did not meet the minimum standards and qualifications "shall be held as invalid." We interpreted the statute in *Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9 (1989) and *Mitchell* v. *State*, 298 Ark. 536, 769 S.W.2d 18 (1989). The holdings of those cases made it clear that when a police officer was not qualified at the time of an arrest, and the defendant's subsequent conviction was based solely on a citation issued by that officer, the charging instrument was invalid and any conviction based on it would also be held invalid.

In reaction to our holdings in *Grable* and *Mitchell*, the General Assembly enacted Act 44 of 1989. Act 44 amended Ark. Code Ann. § 12-9-108(a) to provide that actions taken by non-qualified officers "shall not be held invalid merely because of the failure to meet the standards and qualifications." The Act expressed the legislature's intention that the amendment apply to any pending cases. Additionally, it was enacted with an emergency clause. Consequently, Ark. Code Ann. § 12-9-108(a) was amended effective November 8, 1989, prior to the trial court's order denying appellant's motion to dismiss. Appellant's argument that the application of Act 44 to his situation violates the Ex Post Facto Clauses of the United States and Arkansas Constitution is therefore squarely before this Court.

Article 1, § 10 of the United States Constitution provides

that, "No state shall . . . pass any . . . ex post facto law. . . ." That clause has most recently been interpreted by the United States Supreme Court in *Collins* v. *Youngblood*, No. 89-742 (U.S. S. Ct. June 21, 1990). The *Collins* case is significant because it clearly limits the types of situations which will constitute violations of the Ex Post Facto Clause.

In *Collins*, the defendant was convicted of aggravated sexual abuse. He was sentenced to life imprisonment and fined $10,000. On a writ of habeas corpus in state district court he argued that the Texas code did not authorize both a fine *and* a term of imprisonment, and, consequently, his judgment of conviction and sentence were void under the authority of a Texas case styled, *Bogany* v. *State*. The state district court recommended that the writ be granted. The Texas Court of Criminal Appeals had the exclusive power to grant such writs, but before they considered the application for the writ, a new Texas statute was enacted which allowed an appellate court to reform an improper verdict. Relying on that statute, the Court of Criminal Appeals reformed the verdict by dropping the fine, and denied the defendant's request for a new trial. The defendant then sought habeas relief in the United States District Court arguing that the retroactive application of the statute violated the Ex Post Facto Clause of the Constitution. The United States District Court concluded that there was no ex post facto violation because the punishment was not increased, and the elements of the offense or the ultimate facts necessary to establish guilt were not changed. The Fifth Circuit Court of Appeals reversed, however, holding that the defendant's right to a new trial under the *Bogany* case was a "substantial protection" which the retroactive application of the new Texas statute abrogated, thus violating the Ex Post Facto Clause. On those facts, the United States Supreme Court granted certiorari and held that the retroactive application of the statute did not violate the Ex Post Facto Clause.

In tracing the history of the Ex Post Facto Clause, the Court relied heavily upon two early cases, *Calder* v. *Bull*, 3 Dall. 386 (1798) and *Beazell* v. *Ohio*, 269 U.S. 167 (1925). In *Calder*, Justice Chase set forth the types of legislative acts which in his view implicated the core concern of the Ex Post Facto Clause:

1st. Every law that makes an action done before the

passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

In *Beazell*, the Court explained:

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, *or which deprives one charged with crime of any defense available according to law at the time when the act was committed*, is prohibited as ex post facto.

(Emphasis added.)

The *Collins* Court explained that, "The Beazell formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins*, No. 89-742, slip op. at 5 (U.S. S. Ct. June 21, 1990). The Court noted that subsequent cases had discussed the issue in terms of "procedural" versus "substantive" rights, and that using language such as "affect[ing] matters of substance," "substantial protections with which the existing law surrounds the person accused of crime," and "substantial personal rights," has imported confusion into the interpretation of the Ex Post Facto Clause, *id.* at 7, and "should not be read to adopt without explanation an undefined enlargement of the Ex Post Facto Clause." *Id.* at 9.

The *Collins* Court concluded that "the best way to make sense out of [such] discussion[s] in the cases is to say that by simply labelling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the Ex Post Facto Clause." *Id.* at 8. The Court then overruled two of its cases to the extent that

they expanded the scope of the Ex Post Facto Clause beyond that discussed in *Collins*.

In overruling *Kring* v. *Missouri*, 107 U.S. 221 (1883), the Court discussed the meaning of the term "defense" as it is used in the *Beazell* formulation of ex post facto violations. The discussion is particularly pertinent to the case at hand because, using the broadest sense of the word, the fact that appellant was arrested and charged by a non-qualified officer would be a "defense." *Collins* makes it clear, however, that for purposes of the Ex Post Facto Clause, the term "defense" does not stretch that far:

> This analysis [in *Hall*] is consistent with the *Beazell* framework. A law that abolishes an affirmative defense of justification or excuse contravenes Art. I, § 10, because it expands the scope of a criminal prohibition after the act is done.
>
> *   *   *
>
> It is possible to reconcile *Kring* with the numerous cases which have held that "procedural" changes do not result in ex post facto violations by saying that the change in Missouri law did take away a "defense" available to the defendant under the old procedure. But this use of the word "defense" carries a meaning quite different from that which appears in the quoted language from *Beazell*, where the term was linked to the prohibition on alterations in "the legal definition of the offense" or "the nature or amount of the punishment imposed for its commission." . . . *The "defense" available to Kring under earlier Missouri law was not one related to the definition of the crime, but was based on the law regulating the effect of guilty pleas. Missouri had not changed any of the elements of the crime of murder, or the matters which might be pleaded as an excuse or justification for the conduct underlying such a charge; it had changed its law respecting the effect of a guilty plea to a lesser included offense.* The holding in *Kring* can only be justified if the Ex Post Facto Clause is thought to include not merely the *Calder* categories, but any change which "alters the situation of a party to his disadvantage." We think such a reading of the Clause departs from the meaning of the Clause as it was under-

stood at the time of the adoption of the Constitution, and is not supported by later cases.

*Id.* at 11-12 (emphasis added).

■ Similarly, in the instant case, the retroactive application of Act 44 does not violate the Ex Post Facto Clause because it does not punish as a crime an act previously committed, which was innocent when done. It does not make more burdensome the punishment for a crime, after its commission. It does not alter a legal rule of evidence to receive less or different testimony than was required at the time of the commission of the offense. Finally, it does not deprive appellant of any defense available according to law at the time when the act was committed.

Art. 2, § 17 of the Constitution of Arkansas similarly provides, "No . . . ex post facto law . . . shall ever be passed; . . . ." The appellant does not offer any argument, and none is readily apparent to us, showing why we should interpret the ex post facto doctrine in a manner different than that of the Supreme Court of the United States.

Affirmed.