The Honorable Clark Hall State Representative
302 Elm Street Marvell, Arkansas 72366-8729
Dear Representative Hall:
I am writing in response to your request for an opinion on several questions regarding A.C.A. § 14-14-1314 (Supp. 2009), which provides in relevant part that "[i]n the performance of his or her official duties, a constable shall" wear a uniform of a specified description (subsection (b)) and drive a vehicle with specified markings (subsection (c)). Your inquiry is as follows:
 Regarding § 14-14-1314(b) and (c) and the requirement that a constable wear a required uniform as well as the requirement that a constable's vehicle be clearly marked, does the failure to abide by these requirements render a constable's official duty or action void? Specifically, if a constable is issuing traffic citations or conducting any other official duty while either not wearing the required uniform or, if he or she is wearing the uniform, is doing so in a vehicle that is not clearly marked, are those traffic citations or official duties lawful or proper? In other words, are the uniform and vehicle requirements non-discretionary for a constable to conduct official business?
 If the uniform and vehicle requirements are non-discretionary, what is the remedy for a citizen who has been subject to a constable's official duties (such as having been issued a traffic citation)? Further, if you opine that the uniform and vehicle requirements are, in fact, discretionary, how should § 14-14-1314 be enforced if a constable's official duties conducted in violation of that statute do not render those official duties void? *Page 2 
RESPONSE
Initially, I note that it is not possible for me to provide definitive answers to your questions. The legislature has required constables to take certain actions but has specified neither any means to ensure compliance or remedy noncompliance, nor any consequence for noncompliance in any proceeding against a third party. The legislature may wish to reexamine this issue in the future and provide clarification of its intent. In the meantime, only a court having jurisdiction can finally determine answers to questions like the ones posed in your request, which answers may vary from case to case depending upon all the relevant facts of each.
As a general matter, however, it is my opinion that official actions taken by a constable while not in compliance with A.C.A. § 14-14-1314(b) and/or (c) will not normally be held to be void, but that a motion to suppress evidence that was obtained by a constable while not in compliance might be granted in a particular case.
A constable clearly has authority to make arrests and issue citations. See A.C.A. § 16-19-301(a) (Repl. 1999),Credit v. State, 25 Ark. App. 309, 758 S.W.2d 10 (1988);see also Op. Att'y Gen. 2009-065 (discussing a constable's authority to issue citations), Ark. R. Crim. Proc. 4.1, 5.2 (giving law enforcement officers authority to arrest and issue citations without warrant). Beyond mere authority, a constable has a statutory duty to "keep the peace and cause offenders to be arrested. . . ." A.C.A. § 16-19-301(a); see also Op. Att'y Gen. 2008-169 (discussing a constable's affirmative duties to keep the peace, make arrests, and the like).
In Meyers v. State, 253 Ark. 38, 484 S.W.2d 334 (1972), the Supreme Court of Arkansas held that a municipal policeman has a continuing duty, not just the authority, to enforce the law, and that a policeman is "in a sense, on duty 24 hours a day, seven days a week and is not relieved of his obligation to preserve the peace while `off duty.'" Id. at 46. The Court cited a statute setting forth the obligations of municipal policemen, which statute, it might be noted, is similar in some respects to the statute setting forth the law enforcement duties of constables and provides in part that municipal policemen have "all the power of constables." A.C.A. § 14-52-203(b)(4) (Repl. 1998). See also Op. Att'y Gen. 96-120 (interpreting Meyers to mean that an off-duty certified deputy sheriff may make an arrest for a misdemeanor committed in his presence). While the officer in Meyers was in uniform, my predecessor, in Op. Att'y Gen. 96-120, did not condition his *Page 3 
opinion on the deputy's wearing of a uniform, and I share the view that an officer's authority is generally not dependent upon the clothes he or she is wearing.
It is true that the uniform and vehicle marking requirements of A.C.A. § 14-14-1314(b) and (c) are phrased in mandatory terms, using the word "shall." I previously opined that expenses legitimately incurred in complying with such requirements are not discretionary expenditures and therefore must be reimbursed by the county quorum court. See Op. Att'y Gen. 2008-169.[1] The legislature's use of the word "shall" surely indicates its intent that the uniform and vehicle marking requirements are mandatory and binding upon constables. That legislative intent is rational and legitimate. Compliance with the uniform and vehicle marking requirements results in a direct public benefit, which is that "the officer deters crime by his uniformed presence, he acts as a haven for those in need of protection, and he symbolizes a safe community." City of Sherwood v. Lowe,4 Ark. App. 161, 165, 628 S.W.2d 610 (1982). The requirements, when followed, also promote order, public confidence, and compliance with the requests of officers, reassuring those who are stopped or detained by a constable that such person is legitimately an officer.See, e.g., State v. Whitney,176 Ind. App. 615, 377 N.E.2d 652 (1978).
Given the affirmative law enforcement duties of constables noted above, however, and absent a clear expression of legislative intent regarding the consequences of noncompliance, I conclude that the legislature did not intend to invalidate all official actions of constables taken in noncompliance with the uniform and/or vehicle marking requirements.
A line of reported cases in Arkansas can be viewed as confirmation of my conclusion. In Johnson v. City of Kensett,301 Ark. 592, 787 S.W.2d 651 (1990), and similar cases, the Supreme Court of Arkansas reversed and dismissed convictions where persons were charged by officers who did not meet statutory minimum requirements for employment as police officers. The Court's rulings were based upon A.C.A. § 12-9-108(a), which at the time provided that a person who did not meet qualifications "shall not take any official action as a police *Page 4 
officer, and any action taken shall be held as invalid." A.C.A. § 12-9-108(a) (1987). Later, the statute was amended to provide instead that actions taken by officers not meeting all minimum qualifications "shall not be held invalid merely because of the failure to meet the standards and qualifications."Act 44 of 1989 (3rd Ex. Sess.), § 1; see
A.C.A. § 12-9-108(a) (Supp. 2009) (current codification, identical in relevant part to post-Act 44 codification). The Court thereafter refused to invalidate charges based upon such failures.See, e.g., Ridenhour v. State,305 Ark. 90, 805 S.W.2d 639 (1991). The cases demonstrate, in my view, the courts' willingness to invalidate a charge, in circumstances somewhat similar to those at issue here, based upon a clear expression of legislative intent, but not otherwise. The cases further demonstrate that an illegal arrest, without more, is not a bar to prosecution or a defense to conviction. See, e.g.,Weaver v. State, 103 Ark. App. 201, 287 S.W.3d 649 (2008).
It could be argued that some taint of illegality surrounds an arrest made or citation given by a constable in violation of A.C.A. § 14-14-1314(b) and/or (c). A court might be inclined at least in an egregious case to grant a remedy for noncompliance, it being a general principle of the law to provide a remedy for every wrong. See, e.g., Black and White,Inc. v. Love, 236 Ark. 529, 367 S.W.2d 427 (1963).
In my view, suppression of evidence gathered by a constable who was not in compliance with the uniform and/or vehicle marking requirements is the remedy most likely to be applied in a particular case.
The exclusionary rule may be applied in any criminal case where evidence has been illegally obtained due to a violation of a statute or rule, not just in cases of violation of constitutional rights.See Ark. R. Crim. Proc. 16.2(a); cf. Dansby v. State,338 Ark. 697, 1 S.W.3d 403 (1999) (considering, but rejecting under the particular facts, an argument that a violation of Ark. R. Crim. Proc. 15.4 justified suppression of evidence).
The suppression of a confession or other evidence gathered is commonly the remedy for an illegal arrest. See, e.g., Weaver. Application of the exclusionary rule in a case of noncompliance with the uniform and/or vehicle marking requirements might in an extreme case also be consistent with the rule's stated purpose, which is to deter police misconduct. See Hoay v. State,348 Ark. 80, 71 S.W.3d 573 (2002). *Page 5 
The exclusionary rule is set forth in Ark. R. Crim. Pro. 16.2, and its application was described in some detail in Dansby. The court should suppress evidence illegally obtained if the violation of law at issue in the motion to suppress was substantial or if suppression is otherwise required by law. The rule continues in relevant part:
 In determining whether a violation was substantial, the court is to consider all the circumstances, including:
 (i) the importance of the particular interest violated;
 (ii) the extent of deviation from lawful conduct;
 (iii) the extent to which the violation was willful;
 (iv) the extent to which privacy was invaded;
 (v) the extent to which exclusion will tend to prevent violations of these rules;
 (vi) whether, but for the violation, such evidence would have been discovered; and
 (vii) the extent to which the violation prejudiced moving party's ability to support his motion, or to defend himself in the proceedings in which such evidence is sought to be offered in evidence against him.
Ark. R. Crim. Proc. 16.2(e) (emphasis supplied).
A court's willingness to apply the exclusionary rule in this area is not assured, and likely will vary from case to case. In my opinion, however, it is possible that a court, for the purpose of deterring similar violations, would in some cases grant a motion to suppress evidence gathered by a constable in connection with a non-emergency arrest or citation made while the constable was not in compliance with the uniform and/or vehicle marking requirements.
Assistant Attorney General J. M. Barker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The cited opinion was based upon the fact that the statute providing for reimbursement referred to township officers as well as county officers. Act 732 of 2009 revised the statute to remove the references to township officers. See
A.C.A. § 14-14-1207 (Supp. 2009). Constables are township officers.See Ark. Const. art. 7, § 47.