**NEAPOLITAN, Plaintiff-Appellant, v. UNITED STATES STEEL CORPORATION, Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3844. Decided October 16, 1956.

John Ruffalo, Youngstown, for plaintiff-appellant.

Manchester, Bennett, Powers & Ullman, Youngstown, for defendant-appellee.

## OPINION

Per CURIAM.

Enroute from Niles in the early morning hours of March 1, 1954, Plaintiff with a companion allegedly encountered motor trouble in the pick-up truck in which they were riding south on Salt Springs Road. a duly dedicated accepted highway of the City of Youngstown, and about 2:30 o'clock on the morning of that day allegedly repaired the trouble on Youngstown City dump property situated on Salt Springs Road in Youngstown, Ohio, near defendant's steel plant, while headed against the current of traffic.

After completing such repairs, as they testified, and while resting smoking a cigarette and drying their clothes in the cab of the truck two Youngstown city policemen interrogated them, received unsatisfactory answers, found no stolen property, and ordered them to move on when they got straightened around.

Subsequently they drove south on Salt Springs Road onto Mahoning Avenue and had driven a distance of about 150 to 200 feet thereon when two plant protection officers of defendant corporation. holding private police authority under a certificate issued by the Chief of the Police Department of the City of Youngstown, stopped them and inquired "what was you thieves doing down on Salt Springs Road," searched their truck, detained them, so they testified, for fifteen minutes but did not arrest them after their parking had been reported to such officers by defendant's truck driver whose suspicions had been aroused by plaintiff's actions at a time when petty thievery from defendant's property had been rampant.

Plaintiff sued defendant corporation in the court of common pleas for damages for unlawful detention and false imprisonment.

The jury returned a verdict for the defendant, upon which the trial judge subsequently duly entered judgment. Plaintiff appealed to this court on questions of law urging that the trial judge erred in instructing the jury in answer to a question propounded to the jury during deliberation; and that the verdict of the jury and judgment of the trial court entered thereon are manifestly against the weight of the evidence and contrary to law.

There is no evidence that plaintiff was ever on any of defendant's property, nor that any member of defendant's plant protection department saw plaintiff, nor his companion, except when following and stopping them, any place except on Youngstown city property and its duly dedicated streets; and no evidence that property other than their own was found in the truck, nor that they had stolen anything from anybody.

During deliberation the jury sent the following inquiry to the trial judge:—

"If it please the court: the panel would like to know the extent of

jurisdiction of the U. S. Steel Plant Protection Force. Did they have a legal right to go off U. S. Steel Property."

The trial judge answered that inquiry as follows:—

"The answer to that question is: yes, they had a legal right to go off the United States Steel property within the City of Youngstown. Their jurisdiction is within the City of Youngstown by reason of the appointment by the City department head under the provisions of the City charter."

Plaintiff contends that the question propounded by the jury was vague and ambiguous because it was not confined to the facts of the case; and the answer of the trial judge was too general and did not define under what conditions the Plant Protection Force might make an arrest off the premises of the defendant, and misled the jury. Plaintiff supports his contention by citation of 39 **O. Jur., Pages 917-919, Section 250**, and 39 **O. Jur., Pages 924-925, Section 252.**

In support of this contention plaintiff says by brief:—

"If the plaintiff had taken property of the defendant and placed it in the truck and the defendant's employees saw plaintiff taking such property or had reasonable grounds to believe from the circumstances surrounding the activity, conduct or demeanor of the plaintiff that plaintiff had committed such a crime, then their pursuit and arrest might have been lawful. * * *

"It would be ridiculous to say that these plant protection men would not have the legal right to go off the U. S. Steel Property, but the purpose of going off is something else and every act that they perform off U. S. Steel property certainly would not be considered legal."

There is no error prejudicial to plaintiff in the respect urged in the assigned ground of error under consideration.

The testimony of defendant's officers, which officers the jury obviously believed, conflicts with that of the plaintiff and his companion, and clearly indicates that all such officers did was stop plaintiff and his companion to confirm or refute their suspicions.

"An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. * * * However, the mere accosting and making inquiries of a person by an officer does not constitute an arrest. * * *." **5 O. Jur. (2nd), Section 2, Page 18.**

"* * * Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." **5 O. Jur. (2d), Section 22, Page 35.**

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained." **Sec. 2935.04 R. C.**

Clearly upon the foregoing authority there was ample credible evi-

dence in this case that these two officers were perfectly justified in making an arrest even though they obviously did not do so.

It would seem that arrest must precede false imprisonment, and it is conceded that plaintiff was not arrested.

In **Lester v. Albers Super Markets, Inc., 94 Oh Ap 313** at **316**, it is said:—

"The authority of a private citizen to make an arrest was discussed at the bar. That subject is irrelevant to this inquiry. Nothing was said or done indicating that the defendant was assuming to exercise any such authority. It thought its private right of property was being violated, which it was resisting. It was not assuming to vindicate any public right. The plaintiff was not accused of any crime. Nothing was done to indicate that she was being taken into custody, or that she was being held for delivery to a peace officer to answer a criminal charge. Under such circumstances there is no basis for the suggestion that this is a false imprisonment, initiated by a false arrest. In 3 **O. Jur., 138, Section 2,** it is said, 'nor is there any arrest where a person is forcibly seized without pretense of taking him into legal custody.' Much less is there basis for a charge of arrest where no force of any sort is used. In 6 Corpus Juris Secundum, 571, it is said: 'To constitute an arrest there must be an intent to arrest, under a real or pretended authority, accompanied by a seizure or detention of the person which is so understood by the person arrested.'

"As we view the record, it raises the fundamental question of what is imprisonment. Before any need for a determination of illegality arises there must be proof of imprisonment.

"In 35 Corpus Juris Secundum, 512, 513, Section 11, it is said: '* * * submission to the mere verbal direction of another, unaccompanied by force or by threats of any character, cannot constitute a false imprisonment, and there is no false imprisonment where an employer interviewing an employee declines to terminate the interview if no force or threat of force is used, and false imprisonment may not be predicated on a person's unfounded belief that he was restrained.' "

Mindful of the fact that this court cannot as a matter of law find the facts otherwise than as found by the triers of fact we have examined the bill of exceptions with care.

It is conceded that plaintiff was not found violating any law of the State of Ohio nor ordinance of the City of Youngstown nor arrested.

The verdict of the jury and judgment of the trial judge entered thereon are not against the manifest weight of the evidence nor contrary to law.

At the time the incident occurred defendant's plant protection officers were both duly commissioned special policemen, having been so commissioned by the Police Chief of the City of Youngstown under authority of Section 49 of the Youngstown Home Rule Charter. Plaintiff contends that this section does not authorize appointment of private policemen under control and direction of private employers.

**Section 3, Article XVIII Ohio Constitution** provides:—

"Municipalities shall have authority * * * to adopt and enforce

within their limits such local police * * * regulations, as are not in conflict with general laws."

It has been settled law in Ohio that with respect to police regulations charter provisions are subordinate to and controlled by the general laws of the State of Ohio.

The Supreme Court in **Cincinnati v. Gamble, 138 Oh St 220,** said at page 228:—

"* * * Although there is a contrariety of opinion on the proposition, the weight of authority apparently supports the view that both fire and police matters are subject to state control even as to charter cities whose powers of local self-government are derived from constitutional provisions. * * *

"There is, however, no necessity to look to decisions in other states for the question is no longer an open one in Ohio. In the case of **City of Wooster v. Arbenz, 116 Oh St 281 at 284, 156 N. E., 210, 52 A. L. R., 518,** this language was used: 'In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself.' * * *

"There is no hesitation in stating that in this jurisdiction police, fire and health protection are within the sovereign power of the state and with respect thereto, municipalities, whether governed by charter or not, are arms or agencies of state sovereignty. * * *."

Thus it is clear that a special policeman appointed under the provisions of the City Charter has the same powers and jurisdiction as given him by state law, since the charter could not prescribe powers and jurisdiction in conflict therewith.

Even though privately employed such officers derive their authority directly from the sovereign. This point was decided in **New York, Chicago & St. Louis Railroad v. Fieback, 87 Oh St 254,** where it is said in the syllabus:—

"A policeman who is appointed and commissioned by the Governor under §§3427 and 3428 R. C. (§§9150 and 9151 GC), although his appointment was upon the application of a railroad company and his salary is paid by such company, is a public officer, deriving his authority directly from the state; and his acts will be presumed to have been performed in his capacity as such officer, until such presumption is overcome by sufficient evidence.

"A railroad company is not liable for the wrongful acts of such officer while acting by virtue of his office, unless such wrongful acts occurred in the performance of an act which was outside of the public duties of a policeman, and which was authorized or ratified by such company."

In 35 A. L. R. 645 at page 681 the textwriter states:—

"The general rule is that, in the absence of statute, a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority, but employed and paid by the private person or corporation, when the acts complained of are performed in carrying out his duty as a public officer."

See also 32 O. Jur., Section 2, Page 68; §737.05 R. C.; and §737.11 R. C.

It is clear that the two officers in question were duly commissioned police officers and had the powers and jurisdiction as such, despite the fact that they were privately paid and employed.

The judgment of the court of common pleas is not contrary to law for the reasons urged by plaintiff.

Finding no error prejudicial to plaintiff in any of the eight respects urged, only three of which have been briefed, but all of which have been considered, the judgment of the court of common pleas is affirmed.

PHILLIPS, PJ, NICHOLS & GRIFFITH, JJ, concur.