Vince DILDAY *v.* STATE of Arkansas
CR 89-56

Supreme Court of Arkansas
Opinion delivered October 30, 1989
[Rehearing denied December 4, 1989.*]

---

*Purtle, J., would grant rehearing.

*Jeff Duty* and *Tim Morris*, for appellant.

*Steve Clark*, Att'y Gen., by: *Kay J. Jackson Demailly*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This appeal from a conviction for DWI questions whether the original arrest was valid and, if not, whether the conviction is void under *Brewer* v. *State*, 286 Ark. 1, 688 S.W.2d 736 (1985).

The appellant, Vince Dilday, was arrested for a DWI offense by two Bella Vista patrolmen. Appellant moved to quash the arrest on the contention that the Bella Vista officers had no authority to arrest. The patrolmen in question were appointed as deputies by the Benton County Sheriff, pursuant to Act 237 of 1977 [Ark. Code Ann. § 14-15-503 (1987)], which provides that individuals possessing the minimum qualifications required by law may perform all the standard duties and possess the same powers as all other deputies, while in the course of their employment for planned community property owners associations.

Bella Vista is a "planned community" and was paying the salaries of the patrolmen in this case. The statute in question does not mention the method of payment of such appointed deputies, or to whom they are responsible. The parties entered into a stipulation and the record is sparse. It tells us only that the two patrolmen were appointed by the Benton County Sheriff and their salaries were paid by the Bella Vista Property Owners' Association.

The trial court found the Benton County Quorum Court had authorized the sheriff to appoint sixty-seven uncompensated deputies, specifying that they meet state minimum requirements for law enforcement officers, that although the Bella Vista police were funded by private means, they were appointed, supervised and could be fired by the sheriff, that they were empowered to make arrests and had the same authority as other deputies, and

that appellant's arrest was valid.

Appellant argues that the Bella Vista officers were unauthorized to act because they are paid by private funds and are "unaccountable to the public." Therefore, appellant argues, any arrests by such officers are ineffective as official actions. We find no merit in the argument. First, it is clear that the deputies in this case were authorized to arrest. Amendment 55, § 4 of the Arkansas Constitution empowers the quorum court to ". . . fix the number and compensation of deputies and county employees." The Benton County Quorum Court enacted an ordinance on March 3, 1981, authorizing the Benton County Sheriff to appoint and commission a maximum of sixty-seven uncompensated deputies. The ordinance further provided that all deputies appointed under this ordinance must "comply with all state law requirements regarding minimum standards for law enforcement officers."

The reference to the appointed deputies complying with the requirements for "minimum standards for law enforcement officers," is obviously a reference to Ark. Code Ann. §§ 12-9-100 et seq. (1987), the Law Enforcement Officer Training and Standards Act, which provides for minimum training and standards that must be met by *all* individuals acting as law enforcement officers. See Ark. Code Ann. § 12-9-106 (1987). In addition to the quorum court's requirement, Ark. Code Ann. § 14-15-503 (1987) *supra*, under which the deputies were appointed, authorizing deputies employed by property owners associations to make arrests for misdemeanor and felonies, requires that such deputies possess the minimum requirements prescribed by law. If there were any doubt on this point, the emergency clause to an amendment of that statute, Act 171 of 1983, makes it clear that deputies so employed are required to meet the Law Enforcement Standards Act.

The trial court found the deputies in this case met the minimum requirements and therefore were authorized to make arrests. There is no evidence in the record to the contrary, nor has appellant pointed out any evidence that would support a different conclusion. The Benton County Quorum Court authorized only qualified deputies to be appointed by the sheriff, and absent evidence to the contrary, we will presume that public officials will

follow the law in performance of their duties. *Williams* v. *State*, 253 Ark. 973, 490 S.W.2d 117 (1973); *Arkansas Pollution Control Comm'n* v. *Coyne*, 252 Ark. 792, 481 S.W.2d 322 (1972).

As to the accountability of the deputies, while we have no statute outlining the relationship between sheriff and deputy, it is clear under the common law that by the nature of the two offices, a sheriff is liable for the actions of his appointed deputies and has control over their selection and retention. 70 Am. Jur. 2d *Sheriffs* § 13 (1987). The trial court found the facts in this case in accordance with the common law authority of the sheriff, holding that the deputies were under the control and supervision of the Benton County Sheriff. Again, there is nothing in the record to the contrary and on appeal we have only appellant's bare allegation that these deputies were not accountable to the public. Absent evidence to the contrary, we will presume public officers performed their duties as prescribed by law. *Arkansas Pollution Control Comm'n* v. *Coyne, supra; Williams* v. *State, supra. And see, Neapolitan* v. *U.S. Steel*, 149 N.E.2d 589 (Ohio Ct. App. 1956); *City of Cleveland* v. *Kurfrin*, 3 Ohio Misc. 2d 18, 446 N.E.2d 230 (1982).

Appellant maintains that Act 237 gives private corporations the power to hire "private armies," comparable to the feudal system of another era and another hemisphere. The argument is wholly abstract, as there is no evidence whatever in this record of a misuse of power under the act. Certainly the appellant cannot seriously contend his arrest was an abuse of power. It took no small effort by two police cars (narrowly avoiding a collision) to bring him to a stop. He was too inebriated to speak clearly or to stand on his own. Beyond that, if it can be argued that Act 237 creates a potential for abuse, that argument is more appropriately addressed to the legislative branch, from whence the enabling legislation came. These officers are commissioned by the sheriff pursuant to an ordinance of the Benton County Quorum Court. They serve at the pleasure of the sheriff and their authority is terminable at the will of either the legislature or the quorum court. Should abuses arise, it seems unlikely that all of those governmental entities, plus the electorate, would tolerate it for long.

Another contention is that the officers are paid by the property owners association and, therefore, can have no authority to arrest. The law is to the contrary. In *Meyers* v. *State*, 253 Ark. 38, 484 S.W.2d 334 (1972), a Little Rock policeman was employed as a security guard for a motel when he arrested an individual on the motel's premises. The appellant was charged with resisting arrest but argued that he could not be found guilty because the policeman was not an officer authorized to make arrests, but only an employee of the motel. We held that a policeman was a peace officer under our criminal code and that his authority was not dependent on his working a designated shift and no exception was made for working for a private employer. We noted that other jurisdictions have held that, "the fact that a peace officer is employed and paid by public or private agencies other than those having direct responsibility for law enforcement at the time an offense is being committed, or is about to be committed, neither impairs his right to make an arrest or take appropriate action . . . ." This excerpt from the opinion is followed by cites from several jurisdictions.

The case before us presents an even stronger argument than *Meyers* for finding authority to arrest. For while the officer in *Meyers* was being paid by a private concern, given the circumstances of his employment, he was presumably also under its supervision. Here, while the deputies were being paid by the property owners association, they were nevertheless under the control and supervision of the sheriff.

It was stipulated by the parties that the Bella Vista police were not bonded and appellant argues that because of this lack of bonding the officers had no authority to arrest, citing *Brewer* v. *State*, *supra*. This case is easily distinguishable from *Brewer*, where we held a DWI conviction invalid because the only charge against the defendant was by an auxiliary officer who was not acting in compliance with Ark. Code Ann. §§ 12-9-100 et seq. (1987), *supra*, the minimum standards act. However, we recognized in *Davis* v. *State*, 296 Ark. 524, 758 S.W.2d 706 (1988), that under the general rule, an illegal arrest won't void a valid conviction: "It goes almost without saying that a defendant, after having been fairly tried in a court of competent jurisdiction and found guilty . . . is not entitled to be set free on the basis of some flaw in the manner of his arrest," citing from *Singleton* v. *State*,

256 Ark. 756, 510 S.W.2d 283 (1974). We then noted that the holding in *Brewer* was a limited exception to that rule which applied when a non-qualified officer issued the only charges in the case, since pursuant to Ark. Code Ann. § 12-9-108(a) (1987), "any action" taken by such officer "shall be held as invalid."

▮ Here, the trial court found the Bella Vista officers were qualified under Ark. Code Ann. §§ 12-9-100 et seq. (1987), and there is no requirement under that act that officers be bonded in order to lawfully execute their duties. Because *Brewer* is an exception to the general rule as defined by the language of Ark. Code Ann. § 12-9-108(a) (1987), we find no basis to expand that limited exception, nor does appellant cite us to any authority that would favor its expansion. Such a finding would in fact be contrary to the general rule which holds that a lack of bonding or similar deficiency which might affect an officer's official status, will nevertheless authorize him to act as a de facto officer and his actions as to third parties are valid. 70 Am. Jur. 2d *Sheriffs* § 16 (1987).

The dissenting and concurring opinions question the prudence of Act 237. But the wisdom and efficacy of legislation are not the concern of this branch of government and we have not found either constitutional or statutory authority with which this legislation is at variance, the citations of the dissenting opinion notwithstanding. The dissent implies that the bylaws of a planned community may be enforced by the "armed bands" authorized under Act 237. Nothing in the act nor in the record validates that assumption. The dissent cites Article 7 § 46, providing that a county will have but one sheriff. How is that relevant to our deliberations? Does anyone suggest that this legislation enables Benton County to have more than one sheriff? Clearly not. Of what purpose is the reference to other provisions of law in the dissenting opinion, absent any attempt to show wherein those laws are applicable to the problem before us? Of what relevance is the cited language from the case of *State ex rel. Dingess* v. *Scaggs*, 195 S.E.2d 724 (W.Va. 1973), interpreting a section of the West Virginia Code, or Amendment 55, that all county officers shall be bonded "as provided by law," absent any showing those laws affect these individuals and, coupled with other provisions of law, require that they be bonded? Or to Ark. Code Ann. § 21-2-114 (1987) providing that public officials who

appoint deputies and others *"who handle funds"* (our emphasis) shall bond those individuals, in view of the utter lack of evidence that these deputies handle any funds belonging to the public?

We need not wrestle with those disputations concerning a clash between "K-Mart's private army" and "Wal-Mart's private army," conjured up by the dissenting opinion, since the legislature has not seen fit to authorize either and we do not render advisory opinions.

AFFIRMED.

HOLT, C.J., HICKMAN, J., and NEWBERN, J., concurring.

PURTLE, J., dissents.

DARRELL HICKMAN, Justice, concurring. I agree with the result reached, that is, the charges should not be dismissed because of the questionable authority of the officers.

There are broad and serious questions that arise from the Bella Vista retirement community's use of ostensibly public law enforcement officers for its private purposes. But this case is not here for declaratory judgment, nor in any way that I feel will allow us to reach these questions. I think the officers were cloaked with enough official power to arrest a person for violation of the traffic laws. In any event, the appellant should not be exonerated for any lack of authority by these deputies.

What distinguishes this case from those cited in the majority opinion is that in those cases an *off duty* regular police officer is acting for a private individual or firm. *Meyers* v. *State*, 253 Ark. 38, 484 S.W.2d 334 (1972). Some would say, and without serious argument from anyone, a policeman is on duty 24 hours a day; that is, he or she has the official power of the office at all times. *Meyers* v. *State, supra.* But these "deputy sheriffs" were essentially created by the legislature to serve a private community, and the local sheriff's office has opted to give them some semblance of official stature. That is a horse of a different color. I would not examine that practice in this case. It should wait until the private police force, if that is what it is, is properly challenged.

DUDLEY, J., joins in the concurrence.

DAVID NEWBERN, Justice, concurring. The result reached

by the court is correct. I disagree with the statement that the rule of *Brewer* v. *State*, 286 Ark. 1, 688 S.W.2d 736 (1985), is an exception to the rule followed in *Davis* v. *State*, 296 Ark. 524, 758 S.W.2d 706 (1988). In the *Brewer* case we held an officer's act in charging a defendant with a crime by citation was ineffective, and, absent a valid charge, the conviction was invalid. In the *Davis* case, we held an invalid arrest does not invalidate an otherwise valid conviction. To be an exception, the *Brewer* case would have to be one to which the rule in the *Davis* case does not apply. The rule in the *Davis* case would have applied in the *Brewer* case, but it was simply not the issue decided. We should avoid confusing the two rules.

JOHN I. PURTLE, Justice, dissenting. The same people who voted to retain Lord Mansfield's antiquated rule have now brought you this opinion approving the medieval practice of allowing private persons to hire private armies. No doubt the feudal barons were satisfied with a system that allowed them to hire their own police enforcement officials, or private armies, as they were called. The Constitutions of the United States and the state of Arkansas do not provide for private armies, and such armed bands have never been recognized as valid until this time.

The General Assembly has passed some more special legislation which could be interpreted as granting property owners associations the privilege of hiring their own sheriffs. If property owners associations are authorized to hire private law enforcement officials to enforce state laws and the by-laws of their associations, then there is no reason why any individual who can afford it should not be allowed the same privilege. Such an arrangement permits several sets of *de facto* deputies to operate within the same county, in addition to the actual sheriff and his oath-bound deputies. This simply cannot be the law.

The Constitution of Arkansas, article 7, section 46, reads in part:

The qualified electors of each county shall elect one sheriff . . . .

Amendment No. 55, section 6, provides:

All County Officers shall be bonded as provided by law.

Ark. Code Ann. § 21-2-114 (1987) provides:

> Each public official or employee of this state, or political subdivision thereof, who has appointed deputies or employed individuals who handle any funds for the performance of their duties shall bond the deputies and employees in those amounts which he deems necessary to indemnify the state or political subdivision for any loss or mishandling of funds by the deputies or employees.

Ark. Code Ann. § 14-14-1201(e) (1987) provides:

> The county judge of each county shall purchase all surety bonds for county and township officers, and employees thereof, in the amounts fixed by ordinance of the county quorum court pursuant to the purchasing laws governing county government. A bond may cover an individual officer or employee, or a blanket bond may cover all officers and employees, or any group or combination of officers and employees.

Section (g) of the same Code provision requires that all official bonds must be signed and executed by the county court of each county and one or more surety companies licensed to do business in the state.

In *State ex rel. Dingess* v. *Scaggs*, 195 S.E.2d 724 (W.Va. 1973), it was said: "Taking the oath of office and posting bond are the two necessary preparatory acts to qualify for office."

If these security guards are ever to qualify as deputies, they must follow the provisions of the law. If they are county officers or employees, they must be bonded. A county employee is defined under the Code as "any individual or firm providing labor or services to a county for salary or any other form of compensation." So far as I am able to determine from the record, these security guards for Bella Vista Village, a private corporation, have not qualified as county employees. Certainly the sheriff did not see fit to include them under his bond or any other bond. Since "all county officers shall be bonded as required by law" these persons do not qualify as officers of the county pursuant to Amendment 55, Section 6, of the Constitution of Arkansas. They have the same law enforcement rights, duties, and responsibilities as other security guards and private citizens.

I agree with the appellant that these persons are employees of the Property Owners Association of Bella Vista Village in Benton County, Arkansas. They have not qualified as deputies or special deputies, and they are not bonded as required by law. Nor have they qualified as auxiliary officers pursuant to Ark. Code Ann. § 12-9-301 (1987).

The statute under which they apparently believe they are operating is Ark. Code Ann. § 14-15-503 (1987). This law provides that every deputy sheriff appointed under the provisions of the act shall possess all the powers of his principal and may perform any of the duties required by law to be performed by the sheriff. The "deputy sheriffs" in this case were employed by the Property Owners Association of Bella Vista. They were not employed by the sheriff, and he either does not consider them deputies as such or he is violating the law by not posting bonds for them. They are receiving no benefits from the county. No doubt the surety bonding company will be interested in finding out that these people are actually deputy sheriffs. The act provides that these "deputy sheriffs" may be allowed to exercise their powers as deputy sheriffs while in the course of their employment for Bella Vista, but nowhere else in the county. If this is the intention of the legislation, then it is unconstitutional. On the other hand, the legislation makes perfectly good sense if it is intended to allow legal deputy sheriffs to moonlight for private individuals and property owners associations. In such cases, the moonlighters would actually be deputies and not mere pretenders.

A deputy sheriff is in reality the alter ego of the sheriff. He possesses all of the powers of the sheriff — except the power to appoint deputies. See *Tanner* v. *McCall*, 625 F.2d 1183 (5th Cir. 1980).

The appellees in this case have no more right to special application of the law than do grocery stores and other retail establishments or manufacturing concerns. Up until this time, such organizations or institutions have merely hired regular police officers or sheriffs' deputies during their off-duty time. However, if I understand the ruling in this case, they may now hire anybody they please and clothe them will all the powers and authority of deputy sheriffs, provided the sheriffs will give them honorary deputies' titles.

Suppose Wal-Mart's private army decides to overthrow K-Mart's private army? On which side will the real sheriff and his deputies fight? In the event of resulting damage, which sheriff's surety will pay for the damages?

*Purtle, J., would grant rehearing.