Jack LAYMON *v.* STATE of Arkansas

CR 91-51                                  814 S.W.2d 901

Supreme Court of Arkansas
Opinion delivered September 9, 1991

*Michael R. Davis*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. In the second trial of this case, the appellant, Jack Laymon, was convicted of rape and sentenced to forty years imprisonment. On appeal, Laymon raises four arguments for reversal: 1) the trial court erred in allowing the prosecutor to refer to a witness's prior inconsistent statements given at the first trial; 2) the trial court erred in refusing to allow the defense to call a rebuttal witness furnished to the defense the morning of trial; 3) it was error to permit the State's witness to testify concerning her prior sexual relations with the appellant; and 4) the weight and sufficiency of the evidence did not support the verdict. None of the arguments have merit and we affirm.

## SUFFICIENCY OF THE EVIDENCE

Since Laymon's final allegation of error requires us to examine the evidence in this case, we consider it first. *See Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

The appellant was charged by information alleging that, over a period of several years, he engaged in sexual intercourse or deviate sexual activity with a person less than fourteen years of age. The victim, who was Laymon's stepdaughter, testified that she had been sexually molested by Laymon from the time she was ten years old. She testified that Laymon placed his penis between her legs and "move[d] it around" on an average of two to three times a week, from 1986 to 1989. In addition, the victim testified that Laymon had anal intercourse with her "three, maybe four times" and forced her to perform oral sex "two, maybe three times." She reported instances of digital penetration and attempted vaginal intercourse. The victim stated that the abuse usually occurred at home while her mother and brother were sent on various errands.

The victim stated that she was initially afraid to report the molestation because of Laymon's physical abuse of her family. Eventually, however, she reported the abuse to her mother and to a teacher at school, which prompted an investigation by social services.

Shortly thereafter, the family left Laymon and went to stay with the victim's sister in Iowa. The victim testified that her

mother later moved the family back to Arkansas and reconciled with Laymon. The victim recanted her story upon returning to Arkansas and testified that she did so because Laymon threatened to kill her and to have her placed in foster care.

Annette Sachoff, a supervisor with the Department of Human Services who first interviewed the victim, testified that the victim reported instances of anal, oral, and vaginal sexual abuse. Ms. Sachoff testified that the victim's later retraction of her allegations against Laymon was not surprising and that it was not unusual for children to change their stories. Ms. Sachoff found the victim's story to be credible.

Further testimony from the victim revealed that Laymon's molestations continued upon her return to Arkansas, and she again reported it to school authorities, who contacted SCAN (Suspected Child Abuse and Neglect). SCAN director, Betty Simmons, testified that the victim related incidents, or attempted incidents, of oral, anal, and vaginal intercourse and that she had threatened suicide because of the abuse. The victim never recanted anything she told Ms. Simmons.

Dr. Roger Bost examined the child after her molestation was first reported and found a scratch between her anus and vagina and a general tenderness of the rectum. Dr. Michael Hendren examined the victim following the second report of abuse and discovered a one-half-inch tear of the external genitalia. Both physicians testified that, although not conclusive, their medical findings were consistent with the sexual abuse described to them by the victim.

Lastly, the victim testified that on one occasion, Laymon forced her to engage in anal intercourse after the victim's mother walked in and discovered the girl with her pants down. Laymon told his wife that he had been "checking her for pinworms." The victim's mother testified that, while she did not believe Laymon had molested her daughter, Laymon had made the above statement to her under the circumstances described by the victim.

██ Laymon argues that the evidence is insufficient to support a conviction for rape because the only direct testimony of rape came from the victim herself. We have often said that a rape victim's testimony need not be corroborated to support a convic-

tion. *Cope* v. *State*, 292 Ark. 391, 730 S.W.2d 242 (1987); *Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990). Although not necessary, at least one incident of anal intercourse was partially corroborated by the mother's testimony.

On review, it is only necessary to ascertain that evidence which is most favorable to the appellee, and if there is substantial evidence to support the verdict, the finding must be affirmed. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991). Substantial evidence must be forceful enough to compel a conclusion, without suspicion or conjecture. *Id.* We find that the victim's testimony, together with that of the social workers and examining physicians, overwhelmingly supported the verdict.

## ADMISSIBILITY OF THE WITNESS'S PRIOR INCONSISTENT STATEMENTS

We next address Laymon's argument that the trial court erred in allowing the State to refer to prior inconsistent statements given at the first trial.

The State called Laymon's niece, Connie Dew, who apparently contradicted her testimony given at the first trial. The State attempted to impeach Ms. Dew, pursuant to A.R.E. Rule 607, by asking the following questions:

> Q. All right. I've got another question for you. Do you remember testifying under oath previously that you saw Jack Laymon force her to have oral sex?

Defense counsel moved for a mistrial on the basis that the prosecutor had "referred to previous testimony in a previous case." The trial court ruled that reference to prior testimony was permissible as long as no mention was made of a previous trial. We agree. Prior inconsistent statements are properly admissible for impeachment purposes, and Laymon suffered no prejudice since no reference was made to the trial itself.

Laymon's further assertion that the prior statements were not relevant was not argued below, and we will not consider arguments made for the first time on appeal. *Matthews* v. *State*, 305 Ark. 207, 807 S.W.2d 29 (1991).

## TRIAL COURT'S REFUSAL TO PERMIT TESTIMONY

Laymon next contends that the trial court erred in refusing to allow the defense to call a rebuttal witness whose name had been provided by Laymon the morning of trial.

Presumably, testimony of the witness, Perry Bennett, would have rebutted the victim's testimony on direct examination by the State that she had been raped by Laymon on a camping trip. The State objected to the proposed testimony since the witness's name had not been previously disclosed. The following dialogue ensued:

> BY MR. DAVIS: Your Honor, Mr. Laymon supplied me the name of this witness this morning. I wasn't aware of it before this morning. It goes to the credibility of the witness . . .in regards to rebutting what she said about a camping trip. If I had had any previous notice of it, I would have provided him to the prosecution; but I didn't know it until I walked in the Courthouse this morning.

> BY MR. BYNUM: Well, that may be, Judge, but we are entitled to know the names of his witnesses.

> BY THE COURT: Well, I don't know that that's proper rebuttal.

> BY MR. DAVIS: She made a comment, Your Honor, in her direct, that she was on a camping trip where Jack got her drunk and she woke up with just her panties and tee-shirt on, which is a specific act that my client is accused of committing, and this witness will refute that by stating, that this is like it's a proffer, if the court grants his motion, that Jack did not get the children drunk; that she went to bed by herself and they stayed up by the fire most of the evening together, and that's what I was informed of this morning.

The trial court noted that the witness had been present outside the courtroom that morning, long before the victim had ever testified, and ruled that since the defense knew Bennett was a potential witness, his name should have been previously furnished to the State. We affirm the trial court's decision, but for different reasons. *See Gillie v. State, supra.*

The victim had testified that "during deer season one year," Laymon took her and her older brother camping and got both children drunk. When she awoke in the morning, she was dressed only in her tee-shirt and underwear and was bleeding near her rectum. In his proffer of Bennett's testimony, defense counsel offered nothing to indicate that the "camping trip" about which Bennett would testify was the same outing described by the victim. She testified that the incident simply occurred "during deer season one year" and that only she, Laymon, and her older brother were present. Under the facts before us, it is unclear whether the victim and the potential witness were referring to the same occasion and thus whether Bennett's testimony would have been relevant. *See Richmond* v. *State*, 302 Ark. 498, 791 S.W.2d 691 (1990); A.R.E. Rule 103(a)(2).

Moreover, even if we characterize the proposed witness's testimony as appropriate rebuttal evidence, Laymon has not demonstrated that he was prejudiced by the exclusion of Bennett's testimony since the incident in question was only one of several incidents indicating anal intercourse. In addition, the victim's testimony reflects incidents of oral and vaginal intercourse over a span of several years. Any one of these incidents would have supported a conviction for rape. We will not reverse an alleged error that is unaccompanied by a showing of prejudice. *Nard* v. *State*, 304 Ark. 159, 801 S.W.2d 634 (1990).

## TESTIMONY RELATING TO PRIOR SEXUAL CONDUCT

Finally, Laymon contends that the trial court erred in permitting testimony concerning prior sexual conduct between him and Connie Dew, a witness on behalf of the state.

Laymon first argues that evidence of a defendant's prior sexual conduct with a person other than the prosecutrix is not admissible under the Rape Shield Law, Ark. Code Ann. § 16-42-101 (1987). Notwithstanding the fact that Laymon misinterprets the application of this law, this argument was never raised at trial and we will not consider it. *See Williams* v. *State*, 304 Ark. 279, 801 S.W.2d 296 (1990).

Laymon's objection at trial, when the State asked Ms. Dew whether she had previously given statements concerning

whether she and Laymon had ever engaged in sexual intercourse, was that his past sexual history with the witness was irrelevant. This objection was untimely. Examination of the record reflects that the State had been pursuing a line of questioning designed to impeach Ms. Dew's credibility with prior inconsistent statements and had already asked, and received answers to, questions regarding her sexual relations with Laymon. Ms. Dew had admitted to having given prior statements revealing that she and Laymon had engaged in oral intercourse and had previously been asked the exact question at issue, concerning sexual intercourse, without objection. Failure to object at the first opportunity waives any right to raise the point on appeal. *Ferrell* v. *State*, 305 Ark. 511, 810 S.W.2d 29 (1991).

Affirmed.