Jeffrey GIBSON *v.* STATE of Arkansas

CR 93-686                                      875 S.W.2d 58

Supreme Court of Arkansas
Opinion delivered May 2, 1994

*Stanley D. Rauls*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Appellant Jeffrey Gibson appeals his conviction of second-degree battery for causing physical injury to a law enforcement officer, arguing, in the main, that he did not know that the victim, Detective Mark Stafford, was a law enforcement officer and that Detective Stafford was not acting in the line of duty as a police officer in attempting to quell a disturbance at the Williamsburg Apartments. He also claims the trial court erred in permitting the testimony of others present as to their belief that Detective Stafford was a police officer and in instructing the jury on the theory of accomplice liability. We affirm.

*Facts*

In early August 1992, Jeffrey Gibson (Jeffrey), and his twin brother, James Gibson (James), were drinking at the Wrangler, a local bar in Little Rock. Catherine Bunn (Catherine) and Jennifer Gibbs (Jennifer), Jeffrey's former girlfriend, were also at the Wrangler, and when they noticed the Gibson brothers, they left the premises. Catherine drove Jennifer to Williamsburg Apartments. The Gibsons followed in their car. As Catherine pulled up to Jennifer's parked car, James and Jeffrey drove near them. Jennifer walked to her car, and Jeffrey followed her.

The remainder of the facts are disputed in part, but the events leading up to Detective Stafford's injuries appeared to be these. According to Catherine's testimony, she was worried about Jennifer, and, fearing a confrontation, she went to a nearby convenience store and asked Jeff Clark, Harry Janson, Tim Cohen, and Brian Pierce for help. The group went to the Williamsburg parking lot, and the young men waited while Catherine went over to Jennifer's car and asked if she was all right. Jennifer responded that she had asked Jeffrey, whom she thought to be drunk, to leave three times, but he had refused. When Catherine heard Jeffrey call Jennifer a "whore," she told him, "Don't you ever call a girl a whore," and he hit Catherine on the left ear with his fist.

Apparently witnessing Jeffrey's actions, Brian Pierce and the others came forward. James Gibson began to chase them, spraying them with mace. Brian Pierce grabbed a crowbar and began swinging at James Gibson, breaking James's arm.

In the midst of this brawl, Detective Mark Stafford, a Little Rock Police Officer who resided at the Williamsburg complex,[1] received a call to go to Napa Valley Apartments to do surveillance on a case. As he left his apartment, he noticed the group of young men and women fighting near the apartment-complex entrance. Dressed in shorts, t-shirt, and loafers and carrying an officer's flashlight, he approached the group, identified himself as a police officer, showed them his badge, and tried to calm things down. When Jeffrey accused Brian Pierce of breaking his broth-

---

[1] Although Stafford worked as a policeman, he also worked security for Williamsburg for a reduced rent. As a "courtesy officer" he helped, for example, with lockouts or loud music complaints.

er's arm, the two began to argue again, and Detective Stafford tried to separate them. The argument escalated, resulting in Detective Stafford being hit in the left arm with the crowbar as he grabbed the instrument and held on to it. Detective Stafford then succeeded in separating Brian from the Gibson twins and asked for identification. Someone asked who he was, and Detective Stafford told them again that he was a police officer. Jeffrey responded that he wanted a "real" police officer, an on-duty policeman with a real uniform, and that he wanted certain people arrested.

Still holding Brian up against a car, Detective Stafford asked again for IDs, and one of the men handed him his license. As Stafford returned the license, Jeffrey hit him on the top of the head. Stafford turned and grabbed Jeffrey by his shirt, and the two fell to the ground, with Jeffrey pinned under Stafford. Jeffrey's brother James came up from behind and hit Stafford over the head or back (with a crowbar, according to some witnesses, although this is disputed), and Detective Stafford, who possibly hit his head as he fell, blacked out. Jeffrey got out from underneath the officer, rolled him over, and hit him (also kicking him, according to some witnesses) repeatedly, and James, according to Catherine, started doing the same. Jennifer and Catherine ran to Jennifer's car and called 911 emergency services. As a result of the beating, Detective Stafford sustained a fractured jaw and has experienced some dizziness and trouble with memory.

Both Jeffrey and James Gibson were charged with second-degree battery for causing physical injury to a law enforcement officer while he was acting in the line of duty. James negotiated a plea agreement and entered a guilty plea. Jeffrey was convicted and sentenced to five years imprisonment, and he appeals.

Although Jeffrey specifies six assignments of error by the trial court, we consolidate them into three: (1) the trial court erred in denying Jeffrey's motion for directed verdict due to insufficient evidence to convict; (2) the trial court erred in permitting testimony about the knowledge of persons other than the defendant as to Detective Stafford being a police officer; and (3) the trial court erred in instructing the jury as to accomplice liability.

■ We first address Jeffrey's challenge to the sufficiency of the evidence prior to a review of any other asserted trial errors.

*Ricks* v. *State*, 316 Ark. 601, 873 S.W.2d 808 (1994); *Coleman* v. *State*, 315 Ark. 610, 869 S.W.2d 713 (1994); *Clark* v. *State*, 315 Ark. 602, 870 S.W.2d 372 (1994). On appeal, the evidence is reviewed in the light most favorable to the appellee, and the judgment will be affirmed if there is any substantial evidence to support the jury's verdict. *Green* v. *State*, 313 Ark. 87, 852 S.W.2d 110 (1993). Evidence is substantial when it is forceful enough to compel a conclusion one way or the other, beyond suspicion and conjecture. *Ricks, supra.* We need consider only that testimony which supports the verdict of guilty. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993).

## I. Sufficiency of the evidence

Jeffrey's challenge to the sufficiency of the evidence raises two questions: (1) whether the evidence supports the finding that Detective Stafford was acting as a law enforcement officer in the line of duty when he was injured; and (2) whether the evidence supports the finding that Jeffrey knew that Detective Stafford was a law enforcement officer when he struck and injured him. These issues were appropriately preserved in Jeffrey's motion for directed verdict, which consisted of the following contentions:

> Basically I would like to move for a directed verdict as to Count One, because there has been virtually no proof that Jeff Gibson knew Mark Stafford to be a law enforcement officer. In fact, one of their witnesses testified that he didn't believe him to be a law enforcement officer. All of the witnesses testified they were asking for the real police, not Mark Stafford.

> One element they have to prove is that he was acting in the scope of his authority. These witnesses testified that he was working private security, not as a law enforcement officer. They cannot meet those two critical elements in addition to intentionally or knowingly causing physical injury to Mark Stafford.

In order for the jury to have found Jeffrey guilty of second-degree battery in violation of Ark. Code Ann. § 5-13-202(a)(4)(A) (Repl. 1993), the State must have proven:

> (4)   He intentionally or knowingly without legal justifi-

cation causes physical injury to one he knows to be: (A) A law enforcement officer . . . while such officer . . . is acting in the line of duty . . .

In this regard, Jeffrey contends that he neither knew that Detective Stafford was a law enforcement officer nor that Stafford was actually working as such at the time of the affray.

On appeal, Jeffrey urges us to consider these issues as questions of statutory interpretation more so than as challenges to the sufficiency of the evidence. But Ark. Code Ann. § 5-13-202(a)(4)(A) (Repl. 1993) does not require interpretation because it is unambiguous.

Beginning with the question of whether Detective Stafford was acting as a law enforcement officer in the line of duty, we note that, pursuant to Ark. Code Ann. § 5-1-102, law enforcement officer means "any public servant vested by law with a duty to maintain public order or to make arrests for offenses." Police officers are required to "diligently and faithfully enforce at all times all such laws, ordinances, and regulations for the preservation of good order and the public welfare." Ark. Code Ann. § 14-52-203(b)(4) (1987). Officers have a statutory duty to "suppress all riots, disturbances and breaches of the peace." Ark. Code Ann. § 14-52-203(b)(1) (1987).

In accord with these statutes, we have held that a police officer is, "in a sense, on duty 24 hours a day, seven days a week and is not relieved of his obligation to preserve the peace while 'off duty.'" *Meyers* v. *State*, 253 Ark. 38, 46, 484 S.W.2d 334, 339 (1972). *See also Gritts* v. *State*, 315 Ark. 1, 864 S.W.2d 859 (1993); *Dilday* v. *State*, 300 Ark. 249, 778 S.W.2d 618 (1989) (deputy sheriffs hired by planned community are authorized by statute to discharge their duties throughout the county, even if outside the planned community; these duties include the authority to arrest). As the concurring opinion in *Dilday* noted, a police officer "has the official power of the office at all times." 300 Ark. at 255, 778 S.W.2d at 622.

The State put before the jury substantial evidence that the victim, Mark Stafford, was employed by the City of Little Rock as a police officer on August 7, 1992, the date on which Jeffrey Gibson assaulted Detective Stafford during the course of

the parking-lot brawl. Nowhere in his brief does Jeffrey assert that Mark Stafford was not employed as a police officer by the City of Little Rock. As in *Meyers*, Detective Stafford, precisely because of his status as a law enforcement officer, had a statutory duty to maintain public order and to diligently enforce, at all times, such laws as were necessary for the preservation of good order, and to "suppress all riots, disturbances, and breach of the peace" — twenty-four hours a day, seven days a week.

Jeffrey claims that even though police officers may be on duty twenty-four hours a day, the State failed to prove that Detective Stafford was acting "in the line of duty." This assertion, however, brings us back to the challenge to the sufficiency of the evidence, and, as stated earlier, the evidence was more than sufficient to support the jury's finding that Stafford was acting in the line of duty. Jeffrey also claims that because Stafford failed to follow police department procedures while quelling the affray, he should not now be considered a "law enforcement officer . . . acting in the line of duty." Because this argument was not raised below, we will not consider it now.

With regard to whether Jeffrey knew that Detective Stafford was a police officer, we consider an Arkansas Court of Appeals decision helpful and instructive. In *Hubbard* v. *State*, 20 Ark. App. 146, 725 S.W.2d 579 (1987), the appellant was convicted of battery in the second degree for knowingly or intentionally causing physical injury to one he knows to be of sixty years of age or older. *See* Ark. Code Ann. § 5-13-202(a)(4)(C) (Repl.1993). In holding that the State did not meet its burden of proof in establishing that the appellant knew the victim's age, the court explained:

> The plain wording of [5-13-202] imparts that knowledge on the part of the defendant must be personal to him. The statute does not provide a substitute or explanatory equivalent. We believe the test is whether from the circumstances in the case at bar, appellant, not some other person or persons, knew that his victim was sixty years of age or older. A different result by this court could have been reached had the General Assembly defined "knows to be" in the above statute to include one who has information that would lead an ordinary, prudent person faced with similar information to believe that the information is fact.

*Hubbard*, 20 Ark. App. at 148, 725 S.W.2d at 580-581.

In applying the *Hubbard* rationale to the case at hand, we also consider an appropriate test to be whether or not, from the circumstances in the case before us, Jeffrey — and not some other person or persons — knew that his victim, Detective Stafford, was a law enforcement officer.

During his testimony, Detective Stafford explained his working situation and the fact that he was on his way to conduct surveillance in an unrelated case when he ran into the Gibsons and others in the Williamsburg parking lot. The State introduced a photocopy of Stafford's Little Rock detective's badge into evidence. Moreover, most of the group involved in the altercation testified that Stafford had shown them his badge and had told them that he was a police officer. As for whether Jeffrey knew that Detective Stafford was a police officer, the detective explained that he had gone to the site of the altercation and, noticing that it mainly involved three males (one young man with a broken arm, one with a crowbar in his hand, and one with cuts on his face), identified himself as a police officer and showed those present his badge. All of the State's witnesses verified this testimony. Even Jeffrey admitted on cross-examination that he had heard Stafford state that he was a Little Rock police officer, although he claims that he did not believe him. Catherine Bunn testified that before Jeffrey struck Detective Stafford, he looked him in the eye and said, "I don't care who you are mother f_____. I don't care if you are a police officer."

■■ Resolution of these questions requires a determination of who is telling the truth, and credibility of witnesses is a matter for the jury. *Brown* v. *State*, 309 Ark. 503, 832 S.W.2d 477 (1992). Clearly, the evidence was more than sufficient for the jury to find that Jeffrey struck and caused physical injury to Detective Stafford, who was acting as a law enforcement officer in the line of duty, knowing that Stafford was acting as a police officer.

### II. Testimony of others as to their belief that Detective Stafford was a police officer

■ As previously mentioned, the challenge to the sufficiency of the evidence raises a question of whether, at the time of the fight, Jeffrey knew that Mark Stafford was a police officer.

Claiming he did not, he submits that the trial court erred in permitting Harry Janson and Jeff Clark, two prosecution witnesses, to testify that they believed Detective Stafford to be a police officer on the night in question. This aspect of his argument is of no moment because his objection to Harry Janson's testimony was sustained, and he did not ask for an admonition to the jury. *See Hall* v. *State*, 314 Ark. 402, 862 S.W.2d 268 (1993). In addition, Jeffrey failed to state grounds or to obtain a specific ruling on his objection to Jeff Clark's testimony. In order to preserve an issue, the objection below must be specific enough to apprise the trial court of the particular error about which appellant complains. *Hooper* v. *State*, 311 Ark. 154, 842 S.W.2d 850 (1992).

The objections were also untimely. Prior to Janson's and Clark's testimony, Catherine Bunn gave her opinion, without objection, as to Stafford's status: "I believed he was a police officer and I treated him like one." Failure to object at the first opportunity waives any right to raise the point on appeal. *Laymon* v. *State*, 306 Ark. 377, 814 S.W.2d 901 (1991). An objection to inadmissible testimony should be made promptly. *Logan* v. *State*, 299 Ark. 266, 773 S.W.2d 413 (1989). Jeffrey claims that there was no need to object to Catherine's testimony because she saw Stafford identify himself and show his credentials. However, Jeff Clark also testified that he saw Detective Stafford flash his badge; thus, this distinction is flawed. We have held that where similar evidence was previously admitted without objection, the admission of later testimony on the same subject is not prejudicial. *Hooper, supra*. Similarly, the court has refused to find prejudicial error where the evidence erroneously admitted was merely cumulative. *Id; Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988); *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied* 484 U.S. 872 (1987) and 490 U.S. 1075 (1989).

### III. Accomplice liability jury instruction

For his last allegation of error, Jeffrey claims that the trial court erred in instructing the jury on accomplice liability. This objection was properly made and preserved, but the argument is meritless.

According to Ark. Code Ann. § 5-2-403 (Repl. 1993), an individual is liable for the commission of a criminal offense

as an accomplice if he, with the purpose of promoting or facilitating the commission of the offense, either solicits, advises, encourages, or coerces another person to commit the offense, or aids, agrees to aid or attempts to aid the other person in planning or committing the offense. *See Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993). A person need not take an active part in an offense to be convicted of such if the person accompanied the person or persons who actually committed the offense and assisted in such commission. *Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419, *cert. denied* 464 U.S. 835 (1983).

Several witnesses testified that *both* brothers acted in punching and perhaps kicking Detective Stafford. Catherine Bunn claimed that James Gibson hit Stafford over the head with the crowbar and that, at that point, Jeffrey got out from beneath Stafford and began hitting and kicking him, and that James Gibson started doing the same. Tim Cohen testified that Jeffrey got on top of Stafford and hit him in the face after James hit the officer in the back and knocked him out. Harry Janson's testimony was essentially the same as Catherine's; he stated that both Jeffrey and James kicked and punched Stafford in the face. Under the circumstances, we hold that the facts support the accomplice jury instruction.

Affirmed.