The Honorable Brad W. Butler Prosecuting Attorney Nineteenth Judicial District Benton County Courthouse 100 Northeast A Street Bentonville, Arkansas 72712
Dear Mr. Butler:
This is in response to your request for an opinion on "whether or not it is permissible for Benton County to purchase equipment, such as radios or cars, to be used by a division dedicated to policing Bella Vista Village," given the following fact situation stated in your letter:
 Bella Vista Village is situated in Benton County and is an unincorporated community of property owners who have formed a property owners association to perform many of the functions associated with municipalities, including law enforcement. The Bella Vista Property Owner's Association pays for a division of law enforcement officers who conduct law enforcement activities within the village including salary and benefits for the officers and most facilities and equipment used by them. Because the law does not allow a private entity to have a police force, these officers derive their authority from the Benton County Sheriff.
 All Bella Vista law enforcement officers are deputizied by the Benton County Sheriff and the Sheriff maintains operational control over that division.
 At times, the Bella Vista deputies work on law enforcement cases outside the village and non-village deputies work law enforcement cases inside the village.
Although your request does not expressly so indicate, I assume that the Bella Vista Property Owners' Association (the "Association") is a "planned community property owners' association" within the meaning of that phrase as used in A.C.A. § 14-15-503(b). See Dilday v. State,300 Ark. 249, 778 S.W.2d 618 (1989) (upholding, under A.C.A. § 14-15-503, the arrest authority of deputies employed by the Association). Under A.C.A. § 14-15-503(b), a sheriff's deputies employed by a planned community property owners' association are authorized to make arrests and "exercise all other powers as deputy sheriffs. . . ." This provision has been interpreted to permit a deputy employed by a planned community property owners' association to make arrests at places within the county that are outside, as well as inside, the planned community. Gritts v. State,315 Ark. 1, 864 S.W.2d 859 (1993); Op. Att'y Gen. 91-163. The statutory authority extends, however, only to deputies employed by planned community property owners' associations, see Op. Att'y Gen. 84-67, or, since a 1985 amendment, suburban improvement districts.
No Arkansas statute denies counties the authority to purchase equipment to be used by deputies employed by a planned community property owners' association. Accordingly, it would appear to be permissible for a county to purchase such equipment absent some constitutional prohibition.
The use of county property or funds for a private purpose constitutes an illegal exaction under Ark. Const. art. 16, § 13. Pogue v. Cooper,284 Ark. 105, 679 S.W.2d 207 (1984); Op. Att'y Gen. 90-258. In addition, a governmental unit cannot, "within the limits of due process, appropriate public funds to a private purpose." Chandler v. Board of Trustees of theTeacher Retirement Sys. of the State of Arkansas, 236 Ark. 256,365 S.W.2d 447 (1963). Finally, the equal protection clause of the Constitution of Arkansas prohibits governmental distinctions among individuals that have no underlying rational basis. Ark. Const. art. 2, § 3.
The initial question becomes, then, whether the purchase, with county funds, of equipment to be used by deputies employed by a planned community property owners' association constitutes the diversion of such funds to a private purpose.
Arkansas law does not provide a clear answer to the foregoing question. Members of the Supreme Court of Arkansas have expressed, in very general terms, significant doubt about the propriety and legality of the law enforcement scheme permitted under A.C.A. § 14-15-503(b). See Dilday v.State, 300 Ark. 249, 778 S.W.2d 618 (1989) (Hickman and Dudley, JJ., concurring, and Purtle, J., dissenting). In his opinion, Justice Hickman stated that "[t]here are broad and serious questions that arise from the Bella Vista retirement community's use of ostensibly public law enforcement officers for its private purposes." Dilday, 300 Ark. at 255
(emphasis supplied). He went on to state, however, that the Dilday case did not present an opportunity to address those questions. Id. Justice Purtle's dissent insisted that the Association's deputies constituted a "private army." Id. at 256. It should be noted that these "broad and serious questions" existed in the minds of these three justices in the context of a case that did not involve public funding of the operations of the deputies employed by the Association. It might also be noted, however, that a unanimous court made no mention of any such questions in the other, and more recent, case involving the arrest authority of deputies employed by a planned community property owners' association,Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993).
Arkansas Code Annotated § 14-15-501(a) provides that a sheriff is a "conservator of the peace in his county" and, as such, he can fairly be said to owe a law enforcement duty to all of the people of the county, including those residing within a planned community. It might be argued therefore that a purchase of the type at issue is for a public purpose. In addition, the quorum court's determination that the purchase is for a public purpose would be entitled to at least some deference from the courts. See Turner v. Woodruff, 286 Ark. 66, 689 S.W.2d 527 (1985).
As the public or private nature of a governmental purpose is a question of fact, a court would examine all the attendant facts and circumstances in making a determination of the character of the purpose. Accordingly, as in Op. Att'y Gen. 90-258, which addressed the question of whether a deputy could use county-owned property in his private security job during off-duty hours, this office is unable to provide a conclusive opinion as to the characterization of the governmental purpose here. It appears likely that a court would consider, among other things, (a) whether all of the Association's facilities, and Bella Vista Village generally, are open to the public, see Holiday Island Suburban Improvement Dist. No. 1v. Williams, 295 Ark. 442, 749 S.W.2d 314 (1988); (b) the extent to which the Association's deputies work on cases outside Bella Vista Village and non-Association deputies work on cases inside the Village; (c) the extent to which the equipment at issue actually is used outside the Village; (d) whether the Association has granted permission to law enforcement agencies to enter private roadways within the Village, see A.C.A. §27-49-102(3) (Pamphlet 1995); (e) whether the Association has revoked such permission, see A.C.A. § 27-49-112(b) (Pamphlet 1995); (f) whether the Association has posted the signs contemplated by A.C.A. §27-49-106(d) (Pamphlet 1995); (g) the population of Bella Vista Village in relation to the population of the entire county (or of all of the unincorporated areas of the county), see Stuttgart Rice Mill Co. v.Crandall, 203 Ark. 281, 157 S.W.2d 205 (1941); and (h) the amount and character of county-owned equipment available for law enforcement within the Village as compared to other areas of the county.
As is the case with any allocation of public funds, a classification significantly favoring one segment of the population over another may give rise to equal protection concerns. Any such classification will be held to be violative of equal protection unless there is a rational basis underlying the classification and a legitimate governmental objective to be served thereby. See Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729
(1994). Here, not knowing the magnitude of any disparity in the availability of equipment that might arise following a purchase, and able only to speculate about the basis for the classification, I am unable to provide any opinion concerning whether the classification would be held to be violative of equal protection.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh